**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **NIKOLAY RASTORGUEV,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **DAVID SEPIACHVILI,** | § | **Civil Action No. 5:18-cv-00966** |
| **DAVID A. SEPIASHVILI,** | § | |
| **ATERRA EXPLORATION, LLC,** | § | |
| **SOUTHTEX ENERGY CORP.,** | § | |
| **LEVEL ONE ADVISORS, INC., and** | § | |
| **TIGHT ROCK COMPANY, LLC,** | § | |
| | § | |
| **Defendants.** | § | |

**COMPLAINT**

Nikolay Rastorguev complains of David Sepiachvili, David Sepiashvili, Aterra Exploration, LLC, SouthTex Energy Corporation, Level One Advisors, Inc., and Tight Rock Company, LLC and states as follows:

**PARTIES**

1.     Plaintiff Nikolay Rastorguev is an individual resident of the Russian Federation.

2.     David Sepiachvili ("Sepiachvili") is an individual whose residence is presently unknown.  He may be served at 10100 Reunion Place, Ste. 625, San Antonio, TX 78216.

3.     David A. Sepiashvili is an individual.  He may be served at his last known address 230 West 56th Street, Apt. 53D, New York, New York, 10019.  In the alternative, he may be served in care of Level One Advisors, Inc., 8000 IH-10 West, 6th Floor, San Antonio TX 78230.

4.     Aterra Exploration, LLC ("Aterra"), is a Delaware limited liability corporation that was registered to do business in Texas but whose corporate charter in Texas has been forfeited by the Texas Secretary of State.  It may be served through its Texas registered agent InCorp Services, Inc., 815 Brazos St., Ste. 500, Austin, TX 78701.  Pursuant to Section 171.252,

Tex. Tax Code, given the forfeiture of its charter Aterra "shall be denied the right to sue or defend in a court."

5.     SouthTex Energy Corporation ("SouthTex") is a Texas close corporation whose corporate existence has been forfeited.  It may be served by service on its registered agent Aterra Exploration, LLC, 10100 Reunion Place, Ste. 625, San Antonio, TX 78216. Pursuant to Section 171.252, Tex. Tax Code, given the forfeiture of its charter SouthTex "shall be denied the right to sue or defend in a court.

6.     Level One Advisors, Inc. ("Level One Advisors") is a Wyoming close corporation that is registered to do business in Texas.  It may be served by service on its registered agent InCorp Services, Inc., 815 Brazos Street, Suite 500, Austin, TX 78701.

7.     Tight Rock Company, LLC is a Texas limited liability company and may be served by service on its registered agent InCorp Services, Inc., 815 Brazos Street, Suite 500, Austin, TX 78701.

8.     This is a federal securities fraud claim seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against Defendants and certain of their top officials.  This action also seeks recovery of state law claims under the law of supplemental jurisdiction.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act.  The Court has supplemental jurisdiction over all other claims pursuant to 28 U.S.C. §1367 as the other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of

the United States Constitution.

10.     This Court has personal jurisdiction over each defendant. Defendants Aterra, SouthTex, Level One Advisors and Tight Rock do business or maintain regular places of business in this district.  Defendants Sepiachvili and David A. Sepiachvili are either residents of Texas or are subject to personal jurisdiction under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code §17.042, because they committed a tort in whole or part in this district.  Venue is proper in this district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as this is the district in which a substantial part of the events or omissions giving rise to the claim occurred.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mail and interstate telephone communications.

## Scheme to Defraud

12.     Defendant Sepiachvili solicited Plaintiff Rastorguev to loan and invest money to buy mineral leases for hydraulic fracturing or "fracking."  Sepiachvili represented that he and his company Aterra were knowledgeable and experienced in the business and able to carry out new projects.  He agreed to recruit an operator to conduct waterflush stimulation and fracking, supervise the work, and to provide operational management including accounting and bookkeeping.  He proposed to enter into the ventures with Rastorguev through Aterra, which he owned and/or controlled.  The solicitations included trips by Rastorguev to Texas, where he met Sepiachvili and was flown over the oil fields in a helicopter.

13.     As further detailed below, Sepiachvili and Aterra induced Rastorguev into a loan and an investment agreement through fraud.  They lied about and hid their true intentions and plans to misappropriate Rastorguev's money through use of an affiliate or corporate tool under his, and David A. Sepiashvili's, control named Tight Rock.  They did not disclose that Aterra was in serious financial distress and owed $318,000 in overdue federal taxes.  They also did not

disclose that Aterra, and Sepiachvili as a person in a position of ownership or control of Aterra, were in violation of Texas law with respect to several wells, which had not been handled or plugged as required by law. Such failures resulted in a Final Order of the Texas Railroad Commission compelling the unfinished work and imposing penalties.

14.     Tight Rock was unknown to Rastorguev before his loan and investment. Tight Rock is purportedly owned or controlled by David A. Sepiashvili. On information and belief including the similarity of signatures, appearance of both names on corporate documents, and the appearance of both names as account holders of the bank account of SouthTex, Sepiachvili either owned or controlled Tight Rock or conspired with David A. Sepiashvili to commit the frauds complained of herein.

15.     The names Sepiachvili and David A. Sepiashvili appear together or interchangeably on the following corporate and publicly filed documents.

- Aterra's 2015 Texas Franchise Tax Public Information Report identifies David Sepiachvili ("c") as president but is signed David Sepiashvili ("s").

- The December 3, 2015 Special Purpose Loan Agreement is signed by David Sepiashvili ("s") as Aterra's president, in contradiction of the 2015 Public Information Report.

- The April 5, 2016 Articles of Incorporation of SouthTex lists is signed by David Sepiachvili ("c") as Director of Aterra.

- The July 11, 2016 Austin Chalk Development Project Term Sheet is signed by David Sepiashvili ("s") as Director and Manager of Aterra.

- The same July 11, 2016 Austin Chalk Development Project Term Sheet is also signed by David Sepiashvili ("s") as Director of SouthTex.

- The July 12, 2015 (2016) Capital Contribution Agreement of SouthTex is signed by David Sepiachvili ("c") as Director.

- The July 12, 2016 Unanimous Consent of Directors of SouthTex is signed David Sepiachvili ("c") as Director.

- The July 12, 2016 letter confirming incorporation of SouthTex affirms that David Sepiachvili ("c") is Director.

- The July 29, 2016 Account Statement for SouthTex from Wallis State Bank is addressed to both David G. Sepiachvili ("c") and David A. Sepiashvili ("s").

- The December 31, 2016 SouthTex Balance sheet is signed David Sepiachvili ("c") as Director of SouthTex.

16.     Unaware of these subtle variations in the signature block of various corporate documents, Rastorguev pressed Sepiachivili for resolution of the various breaches of the agreements between them (detailed below). Sepiachvili's response, despite the evidence of using both names virtually interchangeably, was that David A. Sepiashvili was his cousin and owned and operated Tight Rock.   Sepiachvili further declared that he had no business relationship or connection to Tight Rock – *i.e.*, that all transactions were arms-length transactions. This was a blatant lie, and further evidence of the premediated fraudulent scheme employed by Sepiachvili using the tools of David A. Sepiashvili, Aterra, Tight Rock, and Level One. The fraud is plain in the following email from Sepiachvili:

> David Sep <david@aterraexploration.com> 13 ноября 2017 г., 12:06
> Кому: Alexey Domakhin <alexey@americanethane.com>, John Houghtaling <john@ghwlegal.com>
>
> John- I understand now where the confusion is coming from. Name that is stated on those docs looks like mine but it's not me. It's my cousin Dave that you met few times and we have similar last names but spelling is different.
> https://www.linkedin.com/in/dasepi/
>
> As stated before, I am confirming that me personally have no relationship to Tight Rock's ownership and the only relationship SouthTex had with TighRock was a purchase of Rusinger well on agreed upon price, which everyone including Nikolai knew.
>
> TightRock had no future interest with Aterra or SouthTex and as a business entity the only interest TightRock had was to find (after 10 month of research and other land and leg work) and sell to us a well (which meets all criteria) on agreed upon price.
> Thanks,
> David

17.     That David A. Sepiashvili conspired with, and allowed Sepiachvili to freely use his name and direct the actions of David A. Sepiashvili and tight Rock, is further evident from the signatures used by Sepiachvili for both men:



18.     At the end of the fraudulent scheme, Sepiachvili had successfully tricked Rastorguev into investing $2,600,000 with Sepiachvili, who then moved that money to Tight Rock at his direction and either under his control or under the control of his co-conspirator David A. Sepiashvili.

19.     Rastorguev declined to be involved in any further transactions with Sepiachvili and brings this suit to move this fraudulent securities scheme into the light of day.

## The Special Purpose Loan Agreement

20.     The first investment was in the form of a loan.  Sepiachvili, acting in concert with David A. Sepiashvili, convinced Rastorguev to loan money to Aterra so it could purchase a lease on 1200 acres of land known as the Nancy Marion lease in Frio County, Texas, for investment or further development.

21.     On December 3, 2015, David A. Sepiashvili, signing as President of Aterra, and acting in concert with or at the direction of Sepiachvili, signed a Special Purpose Loan agreement with Rastorguev, a copy of which is attached hereto as Exhibit A.   Rastorguev provided $1.8 million for Aterra to purchase a lease known as the Nancy Marion lease.   Aterra was to serve as Manager of the project.

22.     The Special Purpose Loan Agreement was induced by fraud.   In particular, but not by way of limitation, Sepiachvili, David A. Sepiashvili and Aterra:

(a) Falsely represented that they would apply Rastorguev's money as set forth in the Special Purpose Loan agreement when they had the present intention, at the time the promises were made, not to carry them out.

(b) Falsely represented in the Special Purpose Loan Agreement that the lease was to be acquired by Aterra "exclusively."   In fact, the lease was acquired from an affiliate, Tight Rock, and then resold to Aterra.   A copy of the assignment from Tight Rock to Aterra is attached hereto as Exhibit B.   On information and belief, based on the price stated in the lease for an extension and Defendants' refusal to disclose the actual price, Tight Rock paid far less than $1.8 million.   Sepiachvili, David A. Sepiashvili and Aterra "flipped" the lease by conveying it from their affiliate or conspirator Tight Rock to Aterra and representing Rastorguev that the purchase price was $1.8 million.   Such representation was false.

(c)     Sepiachvili introduced David. A. Sepiashvili as a "lawyer for Aterra" and a relative to Sepiachvili.   Sepiachvili, David A. Sepiashvili and Aterra failed to disclose that David A. Sepiaschvili was the owner or manager of an affiliate named Tight Rock, and that Rastorguev's money was going to be transferred to Tight Rock as soon as it was received by Aterra.

(d)     Sepiachvili represented that he and Aterra were experienced and capable to manage and sell the Marion lease for a profit, but failed to disclose that Aterra was in financial distress and had not paid all of its federal taxes.  Such failure resulted in the filing of a federal tax lien in the amount of $318,000.

(e)     Failed to disclose that Aterra, and Sepiachvili as a person in a position of ownership or control of Aterra, were in violation of Texas law with respect to several wells, which had not been plugged or otherwise handled as required by law.  Such failures, some dating back to 2013-2015, resulted in a Final Order of the Texas Railroad Commission compelling the unfinished work and imposing penalties on both Aterra and Sepiachvili.  A copy is attached hereto as Exhibit C.

23.     The facts give rise to a strong inference that Sepiachvili, David A. Sepiashvili and Aterra either knew at the time they made the foregoing false statements and omissions that they were false, or acted recklessly and with no regard for their truth.  In particular, the following facts give a strong inference that Sepiachvili, David A. Sepiashvili and Aterra acted with scienter as to each misrepresentation identified above:

(a)     Sepiachvili, David A. Sepiashvili and Aterra immediately acted in contravention of the Special Purpose Loan Agreement by having Aterra purchase the lease from Tight Rock on December 17, 2015, just days after Rastorguev funded the loan without being told of their plan.  No other or unforeseen events occurred after execution of the Special Purpose Loan Agreement which required Sepiachvili, David A. Sepiashvili and Aterra to use an affiliate to buy the lease. The immediacy of action and absence of other events indicate that Sepiachvili, David A. Sepiashvili and Aterra planned such action before the Special Purpose loan Agreement was executed.

(b)     Sepiachvili, David A. Sepiashvili and Aterra immediately acted in contravention of the Special Purpose Loan Agreement by having Aterra purchase the lease from Tight

Rock rather than directly from Nancy Marion.  No other or unforeseen events occurred after execution of the Special Purpose Loan Agreement which required Sepiachvili, David A. Sepiashvili and Aterra to buy the lease from an affiliate. The immediacy of action and absence of other events indicate that Sepiachvili, David A. Sepiashvili and Aterra planned such action before the Special Purpose loan Agreement was executed.

(c)     Sepiachvili told Rastorguev that David A. Sepiashvili was a relative of his.  And in a 2017 e mail copied above, Sepiachvili described David A. Sepiashvili as his cousin and gave a LinkedIn address, which shows David A. Sepiashvili as a research analyst with degrees in electrical engineering, not a lawyer. Sepiachvili's cover up of the true facts after the loan are evidence that his representations and omissions prior to the loan were known to be false and misleading.  Both Sepiachvili and David A. Sepiashvili appear on corporate filings or contracts as discussed more fully above.

(d)     As the identified President of Aterra, Sepiachvili (on the 2015 Public Information Report) and David A. Sepiashvili (on the Special Purpose Loan Agreement) should have known of Aterra's financial distress and lack of compliance with tax payments.

(e)     As the identified President of Aterra, Sepiachvili (on the 2015 Public Information Report) and David A. Sepiashvili (on the Special Purpose Loan Agreement) should have known of Aterra's lack of compliance with well safety and legal responsibilities.

24.     The foregoing material fraudulent misrepresentations and omissions were intended to, and did, induce Rastorguev into entering into and loaning money under the Special Purpose Loan Agreement.  Had Rastorguev known the truth, and the full facts as to such omissions, he would not have entered such transaction.  The fraud was a proximate cause of actual damage to Rastorguev.

25.     Sepiachvili, David A. Sepiashvili and Aterra received Rastorguev's money in trust, in order to apply it to the business deal set out in the Special Purpose Loan Agreement.

Sepiachvili, David A. Sepiashvili and Aterra were thus trustees owing a fiduciary duty to Rastorguev not to divert, or misapply, Rastorguev's money, and the fiduciary duty to make full disclosure to Rastorguev as to the whereabouts and disposition of his money.

26.     In consideration for the loan, Rastorguev was promised 7% interest, 53% of the Net Proceeds in case the lease was sold by Aterra to a third party, and the right to a participation agreement and joint operating agreement if Aterra elected to explore and develop the Lease and drill wells in the Prospect.   The Effective Period of the loan was 18 months, ending June 3, 2017.  Absent an earlier sale or execution of a participation and joint operating agreement, the loan was due with interest within 15 days from the expiration of the Effective Period or June 18, 2017.  In accordance with the agreement, as of that date Aterra owed Rastorguev $1,800,000 in principal and 7% interest for 18 months or $189,000, for a total of $1,989,000.

27.     Aterra, as Manager, was limited to taking actions "in accord with the terms of this Agreement" and "shall not engage in any activity that would be financially harmful to the Prospect."  Purchasing the lease from a related party violated the terms of the Agreement.  It was also financially harmful to the Prospect because it inflated the price to three times the actual price, making it difficult if not impossible to ever make a profit.

28.     No pledge or other security interests in the lease were delivered to Rastorguev as required in the agreement.

29.     Sepiachvili, David A. Sepiashvili and Aterra have failed to provide full disclosure and financial information including the transfer and uses of the money received from Rastorguev.

**The Austin Chalk Development Project**

30.     Sepiachvili next convinced Rastorguev through misrepresentations and omissions to enter into an investment known as the Austin Chalk Development Project.  On or about July 11, 2016, David A. Sepiashvili, as President of Aterra, and Rastorguev executed an agreement

entitled Austin Chalk Development Project Term Sheet, a copy of which is attached hereto as Exhibit D.   Aterra agreed to conduct waterflush stimulation and fracking of all wells, supervise the work, and to provide operational management to SouthTex including accounting and bookkeeping.  Aterra further agreed that Rastorguev "will have access to any financial activity of the Company."

31.     The Austin Chalk Development Project Term Sheet was induced by fraud.  In particular, but not by way of limitation, Sepiachvili, David A. Sepiashvili and Aterra:

(a) Falsely represented that they would apply Rastorguev's money as set forth in the Austin Chalk Development Project Term Sheet when they had the present intention, at the time the promises were made, not to carry them out.

(b) Falsely represented in the Austin Chalk Development Project Term Sheet that Aterra would contribute its own money or property in the form of a "well (or wells) with water flush with equivalent value of $1,000,000 (one million USD) into SouthTex [or] $1,000,000 (one million USD) to the account specified above in exchange of initial 500 shares of SouthTex. Such contribution Aterra shall make no later than within 3 (three) month after signing of this Term Sheet."  In fact Aterra contributed no money or property to SouthTex within the time frame represented.

(c) Falsely represented in the Austin Chalk Development Project Term Sheet that the money contributed by Rastorguev would be used by SouthTex "strictly" to acquire re-entry candidate wells in the Austin Chalk with the possibility to receive not less than 75% Net Revenue Interest and considering the remainder of interest as royalty Interest, and for water flush operations only.  Sepiachvili further promised that Aterra would commence waterflush stimulation "within +/- 30-45 days" after a wellbore was acquired.  In fact, Sepiachvili and/or Aterra caused SouthTex to wire the $800,000 invested by Rastorguev to Tight Rock.  Instead, and in violation of their representations and agreements, on or

about July 25, 2016, Tight Rock, likely using Rastorguev's money or in anticipation and with the expectation of receiving it, purchased three leases from Paterfamilias LLC named the Ruisinger, Sullivan and Lee Carnes leases.  Sepiachvili failed, however, he neither transferred three above named leases to SouthTex nor returned any funds to SouthTex or Rastorguev. In fact, he continued using three leases as well as Rastorguev's funds.

(d)     Represented that Sepiachvili and Aterra were experienced and qualified to purchase and manage oil and gas leases but failed to disclose that Aterra was in financial distress and had not paid all of its federal taxes.  Such failure resulted in the filing of a federal tax lien in the amount of $318,000.

(e)     Failed to disclose that Aterra, and Sepiachvili as a person in a position of ownership or control of Aterra, were in violation of Texas law with respect to several wells, which had not been plugged or otherwise handled as required by law.  Such failures resulted in a Final Order of the Texas Railroad Commission compelling the unfinished work and imposing penalties on both Aterra and Sepiachvili.

32.     The facts give rise to a strong inference that Sepiachvili, David A. Sepiashvili and Aterra either knew at the time they made the foregoing false statements and omissions that they were false, or acted recklessly and with no regard for their truth.  In particular, the following facts give a strong inference that Sepiachvili, David A. Sepiashvili and Aterra acted with scienter as to each misrepresentation identified above:

(a)     Sepiachvili and David A. Sepiashvili immediately acted in contravention of the Austin Chalk Development Project Term Sheet.  Rastorguev deposited $800,000 with South Tex on July 22, 2016.  Just days later, on July 28, 2016, Sepiachvili and David A. Sepiashvili had Aterra wire Rastorguev's money to Tight Rock.  See the Wallace State Bank statement dated  July 29, 2016, copy attached hereto as Exhibit E.   The transfer of

all money invested in SouthTex to Tight Rock rendered it impossible for SouthTex to carry on any of the business as represented in the Term Sheet.  No other or unforeseen events occurred after execution of the Austin Chalk Development Project Term Sheet which required Rastorguev's money to be transferred Tight Rock. The immediacy of action and absence of other events indicate that Sepiachvili, David A. Sepiashvili and Aterra planned such action before the Austin Chalk Development Project Term Sheet was executed.

(b)  Sepiachvili, David A. Sepiashvili and Aterra immediatedly acted in contravention of the Austin Chalk Development Project Term Sheet by, among other things, causing SouthTex to immediately issue 500 shares of stock to Aterra, on the same day that 500 shares were issued to Rastorguev, but without receiving any money or property from Aterra.  No other or unforeseen events occurred after execution of the Austin Chalk Development Project Term Sheet which required such action. The immediacy of action and absence of other events indicate that Sepiachvili, David A. Sepiashvili and Aterra planned such action before the Austin Chalk Development Project Term Sheet was executed.

(c)  Sepiachvili, David A. Sepiashvili and Aterra immediately acted in contravention of the Austin Chalk Development Project Term Sheet by wiring Rastorguev's money to Tight Rock instead of ensuring or allowing the money to be used by SouthTex "strictly." The immediacy of action and absence of other events indicate that Sepiachvili, David A. Sepiashvili and Aterra planned such action before the Austin Chalk Development Project Term Sheet was executed.  Sepiachvili and Tight Rock later offered to convey one of the leases it had acquired to SouthTex.  Such actions were an acknowledgement that Sepiachvili controlled Tight Rock and that the lease(s) purchased by Tight Rock with Rastorguev's money didn't belong to Tight Rock.  Despite repeated demands,

Sepiachvili, David A. Sepiashvili and Aterra did not provide proof of the purchase of any asset by SouthTex, or proof of what Tight Rock purchased using Rastorguev's money.

(d)     As the identified President of Aterra, Sepiachvili (on the 2015 Public Information Report) and David A. Sepiashvili (on the Special Purpose Loan Agreement) should have known of Aterra's financial distress and lack of compliance with tax payments.

(e)     As the identified President of Aterra, Sepiachvili (on the 2015 Public Information Report) and David A. Sepiashvili (on the Special Purpose Loan Agreement) should have known of Aterra's lack of compliance with well safety and legal responsibilities.

33.     The foregoing fraudulent misrepresentations and omissions were intended to, and did, induce Rastorguev into entering into and investing money under the Austin Chalk Development Project Term Sheet. Had Rastorguev known the truth, and the full facts as to such omissions, he would not have entered such transaction. The fraud was a proximate cause of actual damage to Rastorguev.

34.     On or about July 22, 2016, Rastorguev contributed $800,000 to the venture in exchange for 500 shares of SouthTex.

35.     Aterra and its principals Sepiachvili and David A. Sepiachvili received Rastorguev's money in trust in order to apply it to the business deal set out in the Term Sheet. Sepiachvili, David A. Sepiashvili, and Aterra were trustees owing a fiduciary duty to Rastorguev not to divert, or misapply, Rastorguev's money, and the fiduciary duty to make full disclosure to Rastorguev as to the whereabouts and disposition of his money.

36.     Contrary to Sepiachvili, David A. Sepiashvili, and Aterra's fiduciary duties, they failed to apply Rastorguev's money as directed and agreed. They instead misapplied the money they received in trust by transferring it to Tight Rock. They further breached their fiduciary duties of trust by failing to use the money to have SouthTex acquire and hold the wells in its own name, failed to recruit an operator to conduct waterflush stimulation and fracking of all wells,

failed to supervise the work, failed to commence waterflush stimulation within 30-45 days, and failed and refused to provide full and accurate financial reporting and disclosure to Rastorguev.

## CAUSES OF ACTION

Defendants' actions violated the law in many ways, and caused damage to Rastorguev. Each of the following claims is asserted together or in the alternative.

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

37.     Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and did: (i) deceive the Plaintiff as alleged herein; and (ii) caused Plaintiff to purchase or otherwise acquire securities of little or no value.   In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

38.     By virtue of his management and control of Aterra, SouthTex and Tight Rock, Sepiachvili had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff or, in the alternative, acted with reckless disregard for the truth in that he failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to him.  Said acts and omissions were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

39.     By reason of the conduct alleged herein, all defendants knowingly or recklessly,

directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

40.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff suffered damages in connection with his purchase of securities.

### Violations of Section 20(a) of the Exchange Act Against Sepiachvili and David A. Sepiashvili

41.     Sepiachvili and David A. Sepiashvili participated in the operation and management of Aterra, SouthTex and/or Tight Rock, and conducted and participated, directly and indirectly, in the conduct of their business affairs.  As such, Sepiachvili and David A. Sepiashvili were each a "controlling person" of each company within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they each participated in the unlawful conduct alleged.

42.     Because of their positions of authority and control, Sepiachvili and David A. Sepiashvili knew the adverse undisclosed information about Aterra, SouthTex and Tight Rock including those misstatements described herein.  Sepiachvili and David A. Sepiashvili had a duty to disseminate accurate and truthful information to Rastorguev with respect to each company's activities and use of Rastorguev's money, and to correct promptly any materially false statements he made to Rastorguev.

43.     By reason of the above conduct, Sepiachvili and David A. Sepiashvili are each liable to Rastorguev pursuant to Section 20(a) of the Exchange Act for the violations committed by Aterra, SouthTex and Tight Rock.

### Fraud

44.     The actions of Sepiachvili described above constitute fraud and fraudulent inducement.  Sepiachvili made material misrepresentations which were false, and which were either known to be false when made or were asserted without knowledge of their truth.  The false

representations by Sepiachvili were intended to be acted upon, were relied upon, and caused injury to Rastorguev.

45.     Sepiachvili also committed fraud by nondisclosure.   Sepiachvili voluntarily disclosed partial and incomplete information, made representations which gave rise to the duty to disclose new information that he was aware made the earlier representation misleading or untrue, and/or made a partial disclosure and conveyed a false impression which gave rise to the duty to speak the full truth.   The omitted facts were material and Sepiachvili knew Rastorguev was ignorant of the facts and did not have an equal opportunity to discover the facts.   Sepiachvili was deliberately silent when he had a duty to speak.   By failing to disclose the full facts, Sepiachvili intended to induce Rastorguev to invest both directly and via a loan.   Rastorguev relied on Sepiachvili's nondisclosure and was injured as a result of acting without that knowledge.

46.     Rastorguev is therefore entitled to judgment for actual damages for fraud.

47.     Rastorguev is further entitled to judgment for exemplary damages.   Sepiachvili's fraud also constitutes a violation of Texas Penal Code Section 32.45 (misapplication of fiduciary property) and was committed knowingly or intentionally.   Accordingly, pursuant to section 41.008, Texas Civil Practice & Remedies Code, there is no limitation on the amount of exemplary damages that may be recovered by Rastorguev against Sepiachvili.

### Theft

48.     Sepiachvili and David A. Sepiashvili misappropriated Rastorguev's money without Rastorguev's effective consent and with intent to deprive Rastorguev of his money. Sepiachvili and David A. Sepiashvili thereby committed theft as defined in Section 31.03 of the Texas Penal Code.

49.     Pursuant to Chapter 134 of the Texas Civil Practice & Remedies Code (The Texas Theft Liability Act), Rastorguev is entitled to recover from Sepiachvili and David A. Sepiashvili for their thefts in the form of a civil judgment for actual damages as found by the trier of fact,

plus an additional amount as set forth in the Act, plus court costs and reasonable and necessary attorney fees.

## Breach of Fiduciary Duty

50.     Defendants owed fiduciary duties to Rastorguev.  Their duties arose by virtue of one or more of the following circumstances, (a) Sepiachvili's and David A. Sepiashvili's management and control of Aterra, SouthTex and Tight Rock when they received Rastorguev's money; (b) Aterra, SouthTex and/or Tight Rock's receipt of Rastorguev's money in trust or as Rastorguev's agent; (c) Tight Rock's status as a resulting trustee of property purchased in its name using Rastorguev's money and/or (d) by virtue of Sepiachvili's special relationship of trust and confidence toward Rastorguev prior to and separate from the parties' agreements.

51.     Sepiachvili and David A. Sepiashvili breached their fiduciary duties to Rastorguev including the duty of obedience, care, loyalty and candor/full disclosure.

52.     Sepiachvili's and David A. Sepiashvili's breaches of fiduciary duty proximately caused injury to Rastorguev and/or benefit to Sepiachvili and David A. Sepiashvili.  Rastorguev is therefore entitled to judgment for actual and punitive damages for their breaches of fiduciary duty.

## Breach of Contract

53.     The Defendants' actions and omissions described above constitute breaches of the Austin Chalk Development Project and the Special Purpose Loan Agreement.  The Special Purpose Loan was not repaid within 15 days of the expiration of the Effective Period (June 18, 2017) and is wholly in default.

54.     Rastorguev is therefore entitled to and seeks judgment for actual damages for breach of contract.  Rastorguev is further entitled to recover his reasonable attorney fees for such breach of contract, both through trial and in the event of an appeal.

**Purchase Money Resulting Trust/Declaratory Relief**

55.     SouthTex used Rastorguev's money or the expectancy of Rastorguev's money to purchase the Ruisinger, Sullivan and Lee Carnes leases.  As a result, SouthTex holds the leases subject to a purchase money resulting trust in favor of Rastorguev.  Rastorguev is the real and equitable owner of the leases and SouthTex is merely the trustee.  Rastorguev is entitled to judgment enforcing the resulting trust.

56.     Rastorguev is entitled to a Declaratory Judgment finding and declaring him to be the true and equitable owner of the Ruisinger, Sullivan and Lee Carnes leases.

**Civil Conspiracy**

57.     Sepiachvili, David A. Sepiashvili, Aterra, SouthTex,  Level One Advisors, and Tight Rock conspired to commit the acts and causes of action described herein.  They agreed on the object to be accomplished (taking Rastorgiev's money); had a meeting of minds on the object or course of action; committed one or more unlawful, overt acts including those described herein; and their conspiracy was the proximate cause of Rastorguev's damages.

58.     Sepiachvili, David A. Sepiashvili, Aterra, SouthTex, Level One Advisors and Right rock are therefore jointly and severally liable for the claims and causes of action described herein and for Rastorguev's damages, attorney fees and costs.

**Respondeat Superior/Vice Principal Liability**

59.      At all times material to this Complaint, Sepiachvili was a corporate officer and vice principal of Aterra, SouthTex, and on information and belief, Level One Advisors and Tight Rock.  As such, under Texas law Aterra, SouthTex, Level One and Tight Rock are jointly liable for the actions and misconduct of Sepiachvili on their behalf under principles of respondeat superior and vice principal liability under Texas law.

60.     Level One Advisors served as Managing Partner of Tight Rock Company.  As such, Level One Advisors is a vice principal of Tight Rock under Texas law.  Tight Rock is therefore jointly liable for the actions and misconduct of Level One Advisors under principles of respondeat superior and vice principal liability under Texas law.

61.     According to a Jan. 17, 2017 Application for Reinstatement filed with the Texas Secretary of State, David A. Sepiashvili is the Controlling Officer and thus a vice principal of Level One Advisors.  Level One Advisors is therefore jointly liable for the actions and misconduct of David A. Sepiashvili on behalf of Level One Advisors under principles of respondeat superior and vice principal liability under Texas law..

62.     As a result of the foregoing, Tight Rock is jointly liable for the actions and misconduct of David A. Sepiashvili including his conspiracy with Sepiachvili.

### Alternative Dispute Resolution and Arbitration as to the
### Special Purpose Loan Agreement

63.     The Special Purpose Loan Agreement contains provisions requiring mediation and arbitration.  Rastorguev hereby tenders full compliance with such provisions.

64.     In accordance with Section 154.021 of the Texas Civil Practice & Remedies Code, Rastorguev seeks an order of this Court compelling Defendants to appear for and participate in mediation with respect to the claims relating to the Special Purpose Loan Agreement.

65.     Should mediation fail, in accordance with Section 171.021 of the Texas Civil Practice & Remedies Code, Rastorguev seeks an order compelling Defendants to arbitrate the claims relating to the Special Purpose Loan Agreement.

66.     All other disputes, including those with respect to the Austin Chalk Development Project, are not subject to this request for an order compelling mediation and arbitration but are submitted to the Court.

## PRAYER

The foregoing claims entitle Rastorguev to one or more of the following relief, at his election, and subject to the one-satisfaction rule:

a.      Rescission and the return of $1.8 million with regard to the Special Purpose Loan Agreement and $800,000 with regard to the Austin Chalk Development Project;

b.      Specific performance of the Austin Chalk Development Project Term Sheet, including an order compelling Aterra to either deposit $1 million into the account of SouthTex or return its shares in SouthTex leaving Rastorguev as sole shareholder; and an order compelling Tight Rock to return all money provided by Rastorguev, and all properties purchased with that money, to SouthTex or Rastorguev;

c.      Damages in the amount of $1.8 million plus contract interest with regard to the Special Purpose Loan Agreement and $800,000 with regard to the Austin Chalk Development Project;

d.      Finding, declaring, and enforcing the resulting trust, and awarding and conveying the Ruisinger, Sullivan and Lee Carnes leases to Rastorguev as the true and equitable owner;

e.      Finding and declaring that Sepiachvili committed fraud and breach of fiduciary in his dealings with Rastorguev, and that his indebtedness to Rastorguev arose from such frauds and defalcations while acting in a fiduciary capacity;

f.      Additional damages pursuant to the Texas Theft Liability Act;

g.      Punitive damages in an amount sufficient to punish Defendants and set an example to others;

h.      An order compelling Defendants to provide Rastorguev with the properly audited financial statements of SouthTex for the whole period of its existence so that Rastorguev is in the position to provide such financial statements to the tax authorities in the country of his tax residence";Reasonable attorney fees both through trial and in the event of an appeal;

i.      Costs of court; and

j.      Such other and further relief to which Rastorguev may show himself to be justly entitled.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.


Dated:  September  17, 2018.



Respectfully submitted,


By: /s/  *Sim Israeloff*

   **SIM ISRAELOFF**
   Texas Bar No. 10435380
   **CHARLES A. GREEN**
   Texas Bar No. 08347380

**COWLES & THOMPSON, P.C.**
901 Main Street, Suite 3900
Dallas, TX 75202
(214) 672-2000 (Tel)
(214) 672-2326 (Fax)
E-mail: sisraeloff@cowlesthompson.com
   cgreen@cowlesthompson.com

**ATTORNEYS FOR PLAINTIFF**