# EXHIBIT A

## SPECIAL PURPOSE LOAN AGREEMENT

This SPECIAL PURPOSE LOAN AGREEMENT (the "**Agreement**"), entered into and having an effective date of 3 December 2015, is by and among ATERRA EXPLORATION, LLC, a Delaware Limited Liability Company, registration number 4171130, having its registered address at 1201 Orange Street, Suite 600, Wilmington, Delaware 19899, USA ("**ATERRA**"), and NIKOLAI RASTORGUEV, passport number 03 07 721886, residing at imeni 40-letiya pobedy street, # 15, Apt. # 68, Krasnodar City, Russian Federation, Individually (the "**Creditor**"), each referred to herein as a "Party" or collectively as the "Parties".

## СОГЛАШЕНИЕ О ЦЕЛЕВОМ ЗАЙМЕ

Настоящее СОГЛАШЕНИЕ О ЦЕЛЕВОМ ЗАЙМЕ («**Соглашение**»), подписанное и вступившее в силу с 3 декабря 2015 г., заключено между компанией «АТЕРРА ЭКСПЛОРЕЙШН, ЛЛС» (ATERRA EXPLORATION, LLC), Компанией с ограниченной ответственностью, зарегистрированной в штате Делавэр, регистрационный номер 4171130, зарегистрированной по адресу 1201, Оранж Стрит, Сьют 600, Вилмингтон, Делавэр 19899, США (1201 Orange Street, Suite 600, Wilmington, Delaware 19899, USA) («**КОМПАНИЯ АТЕРРА**»), и НИКОЛАЕМ РАСТОРГУЕВЫМ, паспорт 03 07 721886, зарегистрированным по адресу улица им. 40-летия победы, д. 15, кв. 68, город Краснодар, Российская Федерация, от собственного лица («**Кредитор**»), по отдельности именуемыми «Сторона» или совместно именуемыми «Стороны».

### RECITALS

WHEREAS, ATERRA, individually, and jointly with its affiliates, partners, subsidiaries, agents and consultants possesses the requisite knowledge, skill and expertise for the identification, generation and acquisition of oil and gas leases with further enhancement of these leases with value added information (the "**Prospect**") in the Eagle Ford trend located within Frio County, Texas;

WHEREAS, ATERRA has identified an oil and gas lease for ±1,200 (one thousand two hundred) acres located in the Frio County, Texas within the Eagle Ford trend (the "**Lease**") specified on the map provided in Appendix A to this Agreement;

### ПРЕАМБУЛА

ПОСКОЛЬКУ, КОМПАНИЯ АТЕРРА, индивидуально и совместно со своими аффилированными лицами, партнерами, дочерними предприятиями, агентами и консультантами обладает необходимыми знаниями, навыками и экспертизой для определения, разработки и приобретения прав в отношении участков нефтегазовых месторождений и их дальнейшего развития, посредством использования профессиональных знаний, необходимых для разработки месторождения («**Месторождение**») в районе Игл Форд, расположенном в Округе Фрио, Штат Техас;

ПОСКОЛЬКУ, КОМПАНИЯ АТЕРРА определила потенциальный участок нефтегазового месторождения для приобретения, площадью ± 1200 (одна тысяча двести) акров, расположенный в Округе Фрио, Штат Техас в районе Игл Форд («**Участок**»), который указан на схеме, приведенной в Приложении А к настоящему Соглашению и

WHEREAS, ATERRA desires to acquire the Lease with 77% (seventy seven percent) NRI and an agreed upon price of $1,500 per acre (one thousand five hundred US dollars) for the resale and/or exploration and development thereof;

ПОСКОЛЬКУ, КОМПАНИЯ АТЕРРА желает приобрести Участок с 77% (семьдесят семь процентов) ЧВД (Чистая Валовая Доходность) и за согласованную стоимость, равную $1,500 (одной тысяче пятистам долларам США) за один акр земли в целях его последующей перепродажи и/или проведения работ по его разведке и освоению;

WHEREAS, Creditor possesses the funds in the amount of $1,800,000.00 (one million eight hundred thousand US dollars) required to acquire the Lease; and

ПОСКОЛЬКУ, Кредитор владеет денежными средствами в размере $1,800,000.00 (один миллион восемьсот тысяч долларов США), необходимыми для приобретения Участка; и

WHEREAS, Creditor agreed to provide special purpose loan financing to ATERRA (the "**Loan**") in the amount of $1,800,000.00 (one million eight hundred thousand US dollars) (the "**Funds**") for the acqusition of Lease in exchange for the future repayment of the Loan, interest on the Loan and part of the proceeds to be acquired in connection with the resale of the Lease to a third party and/or exploration and development thereof.

ПОСКОЛЬКУ, Кредитор согласился предоставить целевой заем КОМПАНИИ АТЕРРА («**Заем**») в размере $1,800,000.00 (один миллион восемьсот тысяч долларов США) («**Денежные средства**») для приобретения Участка в обмен на последующий возврат Займа, уплату процентов по Займу и части доходов, полученных в связи с последующей перепродажей Участка третьему лицу и/или проведения работ по его разведке и освоению.

NOW, THEREFORE, in consideration of the premises and in consideration of the mutual covenants and agreements contained herein, the Parties do hereby agree as follows:

С УЧЕТОМ ВЫШЕИЗЛОЖЕННОГО, с учетом допущений и взаимных договоренностей, содержащихся в данном Соглашении, Стороны настоящим согласовали следующее

## ARTICLE I DEFINITIONS AND REFERENCES

## СТАТЬЯ I ОПРЕДЕЛЕНИЯ И ССЫЛКИ

SECTION 1.1 Defined terms. When used in this Agreement and unless the context otherwise requires, the following terms shall have the respective meanings set forth below:

РАЗДЕЛ 1.1 Определения Терминов. Следующие термины имеют нижеуказанные значения при использовании в данном Соглашении, в случае если контекст не предусматривает иного:

"AGREEMENT" shall mean this instrument, as originally executed or, if amended pursuant to the provisions of Section 9.8, as so amended.

«СОГЛАШЕНИЕ» означает данный договор в его первоначальном виде или с поправками в соответствии с условиями Раздела 9.8.

"ATERRA" shall mean ATERRA EXPLORATION, LLC, a Delaware Limited Liability Company, registration number

«КОМПАНИЯ АТЕРРА» означает АТЕРРА ЭКСПЛОРЕЙШН, ЛЛС» (ATERRA EXPLORATION, LLC), Компания с

| | |
|---|---|
| 4171130, having its registered address at 1201 Orange Street, Suite 600, Wilmington, Delaware 19899, USA | ограниченной ответственностью, зарегистрированная в штате Делавэр, регистрационный номер 4171130, зарегистрированная по адресу 1201, Оранж Стрит, Сьют 600, Вилмингтон, Делавэр 19899, США (1201 Orange Street, Suite 600, Wilmington, Delaware 19899, USA) |
| "AMI" shall include 1 mile halo area around the Lease in the Prospect. | «ОВИ» включает в себя район, равный 1 миле вокруг Участка на Месторождении. |
| "CLOSING COSTS" shall mean investment bankers' or brokers' fees approved in advance by the Creditor and incurred in connection with the sale of the Lease to a third party. | «РАСХОДЫ НА ЗАВЕРШЕНИЕ СДЕЛКИ» означает стоимость услуг инвестиционных банкиров или брокеров, предварительно одобренная Кредитором и оплаченная в связи с продажей всего или части Участка в пользу третьего лица. |
| "CREDITOR" shall mean Nikolai Rastorguev, passport number 03 07 721886, residing at Gidrostroiteli Street # 28, Apt. # 9, 350065, Krasnodar City, Russian Federation. | «КРЕДИТОР» означает Николай Расторгуев, паспорт 03 07 721886, зарегистрированный по адресу улица Гидростроителей, д. 28, кв. 9, 350065, город Краснодар, Российская Федерация. |
| "EFFECTIVE PERIOD" shall have the meaning given in Section 2.4. | «СРОК ДЕЙСТВИЯ» имеет значение, указанное в Разделе 2.4 настоящего Соглашения. |
| "FUNDS" shall have the meaning given above. | «ДЕНЕЖНЫЕ СРЕДСТВА» имеет значение, указанное выше. |
| "INTEREST" shall have the meaning given in Section 2.3. | «ПРОЦЕНТ» имеет значение, указанное в Разделе 2.3. |
| "LEASE" shall mean a lease, mineral interest, or royalty right covering oil, gas and related hydrocarbons within the Prospect (or a contractual right to acquire such an interest). | «УЧАСТОК» означает участок, в отношении которого возникает право аренды, право на владение полезными ископаемыми, находящимися под данным участком земной поверхности, или право получения арендной платы за разработку нефти, газа и связанных углеводородов в пределах Месторождения (или возможность приобретения таких прав на основании Соглашения). |
| "LOAN" shall have the meaning given above. | «ЗАЕМ» имеет значение, указанное выше. |
| "NET PROCEEDS" shall mean proceeds from the sale of any part or entire Prospect, calculated in accordance with Section 4.2 herein. | «ЧИСТЫЙ ДОХОД» означает доход от продажи всего или части Месторождения, рассчитываемый в соответствии с Разделом 4.2 настоящего Соглашения. |
| "NRI" shall mean income from extraction | «ЧВД» означает доход с добычи за |

DS

net of royalty.

вычетом роялти.

"PARTY or PARTIES" shall have the meaning assigned to it in the preamble to this Agreement.

«СТОРОНА» или «СТОРОНЫ» имеет значение, указанное в преамбуле к настоящему Соглашению.

"PROSPECT" shall mean an area within the AMI, in which the Parties own or will own one or more leases.

«МЕСТОРОЖДЕНИЕ» означает область в пределах ОВИ, в пределах которой Стороны владеют одним или несколькими участками.

"SALE NOTICE" shall have the meaning given in Section 5.1.

«УВЕДОМЛЕНИЕ О ПРОДАЖЕ» имеет значение, указанное в Разделе 5.1 настоящего Соглашения.

"SHARING RATIO" shall mean with respect to each Participant, that percentage set forth opposite such Participant's name in Section 4.1 hereto.

«КОЭФФИЦИЕНТ УЧАСТИЯ В ПРИБЫЛИ» означает относительно каждого Участника, процент, указанный напротив наименования такого Участника в Разделе 4.1 данного Соглашения.

## ARTICLE II LOAN

## СТАТЬЯ II ЗАЕМ

SECTION 2.1 Provision of the Loan. Creditor shall transfer the Funds to the bank account of ATERRA specified below:

Aterra Exploration LLC
CITIBANK
SWIFT: CITIUS33
Account #: 9998175795

РАЗДЕЛ 2.1 Предоставление Займа. Кредитор перечисляет Денежные Средства на расчетный счет КОМПАНИИ АТЕРРА, указанный ниже:

Aterra Exploration LLC
CITIBANK
SWIFT: CITIUS33
Account #: 9998175795

SECTION 2.2 Purpose of the Loan. Loan has a purpose nature. The Funds are provided by the Creditor to ATERRA exclusively for the acquisition and purchase of the Lease with 77% (seventy seven percent) NRI and an agreed upon per acre price of $1,500 (one thousand five hundred US dollars).

РАЗДЕЛ 2.2 Цель Займа: Настоящий Заем является целевым. Денежные Средства предоставляются Кредитором КОМПАНИИ АТЕРРА исключительно в целях приобретения и покупки Участка с 77% (семьдесят семь процентов) ЧВД (Чистая Валовая Доходность) и за согласованную стоимость равную $1,500 (одной тысяче пятистам долларам США) за один акр земли

ATERRA shall provide the Creditor with the possibility to ensure that the Funds are used for the purposes specified above. This Loan is ensured and guaranteed by the Lease itself only.

КОМПАНИЯ АТЕРРА обязана предоставить Кредитору возможность убедиться, что Денежные Средства использованы для целей, указанных выше. Настоящий Займ обеспечен и гарантирован только самим Участком.

SECTION 2.3 Consideration for the Loan. In consideration for the provision of the Loan the Creditor is granted with the

РАЗДЕЛ 2.3 Условия предоставления Займа. В качестве вознаграждения за предоставление Займа Кредитору

DS

following:

A. To receive the 7% (seven percent) interest per annum on the amount of Funds (the "**Interest**");

B. To receive the part of Net Proceeds in case the the Lease is sold by ATERRA to any third party by ATERRA;

C. To demand the execution of separate participation agreement and a joint operating agreement in case ATERRA elects to explore and develop the Lease and to drill well or wells in the Prospect.

The terms of payment of Interest and part of Net Proceeds by ATERRA to the Creditor are specified in Section 4.1.

SECTION 2.4. <u>Effective Period</u>. The Loan is provided to ATERRA at the earlier of (the "**Effective Period**":

A. Expiration of 18 (eighteen) months period from the date of this Agreement;

B. Sale of the entire Lease to any third party;

C. Execution of the separate participation agreement and a joint operating agreement.

The consequences of expiration of Effective Period are specified in Section 4.1.

предоставляются:

A. 7% (семь процентов) годовых от объема Денежных Средств («**Процент**»);

B. Часть Чистого Дохода, в случае если Участок продается КОМПАНИЕЙ АТЕРРА в пользу третьего лица;

C. Возможность требовать заключения отдельного соглашения об участии и соглашения о совместной деятельности в случае если КОМПАНИЯ АТЕРРА примет решение разведывать и развивать Участок и осуществить бурение одной или нескольких скважин на Месторождении.

Условия уплаты Процента и части Чистого Дохода КОМПАНИЕЙ АТЕРРА в пользу Кредитора указаны в Разделе 4.1.

РАЗДЕЛ 2.4. <u>Срок Действия</u>. Заем предоставляется КОМПАНИЕЙ АТЕРРА до наступления одного из следующих событий, которое наступит ранее («**Срок Действия**»):

A. Истечение 18 (восемнадцати) месяцев с даты заключения настоящего Соглашения;

B. Продажа всего Участка в пользу любого третьего лица;

C. Заключение отдельного соглашения об участии и соглашения о совместной деятельности.

Последствия истечения Срока Действия указаны в Разделе 4.1.

## ARTICLE III
## ACQUISITION OF THE LEASE. OBLIGATIONS OF ATERRA.

SECTION 3.1 <u>Obligations of ATERRA.</u> ATERRA shall acquire the Lease with 77% (seventy seven) NRI and an agreed upon price of $1,500 (one thousand five hundred US dollars) per acre pursuant hereto. The

## СТАТЬЯ III
## ПРИОБРЕТЕНИЕ УЧАСТКА. ОБЯЗАТЕЛЬСТВА КОМПАНИИ АТЕРРА

РАЗДЕЛ 3.1 <u>Обязательства КОМПАНИИ АТЕРРА.</u> КОМПАНИЯ АТЕРРА приобретает Участок с 77% (семьдесять семь процентов) ЧВД (Чистая Валовая Доходность) и за согласованную

DS

above NRI and price per acre (77%, $1,500) shall be confirmed by respective documents to be provided by ATERRA to the Creditor at the Creditor's first demand.

стоимость, равную $1,500 (одной тысяче пятистам долларам США) за один акр земли в соответствии с настоящим Договором. Вышеуказанная ЧВД и стоимость за один акр земли (77%, $1,500) подтверждается соответствующими документами, предоставляемыми КОМПАНИЕЙ АТЕРРА Кредитору, по первому требованию последнего.

ATERRA, individually or through its affiliates, contractors and/or sub-contractors, shall provide technical expertise in the preparation and presentation of the Prospect to prospective purchaser candidates. Such items and services to be provided by ATERRA include, without limitation, the following:

КОМПАНИЯ АТЕРРА самостоятельно или через свои аффилированных лиц, подрядчиков и/или субподрядчиков, предоставляет технические консультации для целей подготовки и презентации Месторождения потенциальным покупателям. Услуги, предоставляемые КОМПАНИЕЙ АТЕРРА, включают, в том числе, следующее:

A. Preparation of geologic, geophysical, petro-physical, engineering work and presentation materials;

A. Подготовка геологических, геофизических, петро - физических, технических работ и презентационных материалов;

B. Marketing of the Prospect to prospective purchaser candidates with or without the assistance of investment bankers or brokers, alongside any other prospect(s) ATERRA may have in the Eagle Ford Shale Play.

B. Продажа Месторождения потенциальным покупателям с привлечением или без привлечения услуг инвестиционных банкиров или брокеров, наряду с любыми другими месторождениями, которыми КОМПАНИЯ АТЕРРА может владеть в Нефтегазовом Месторождении Игл Форд.

ATERRA, as the Manager of the Prospect, shall successfully sell or develop the Prospect on best-efforts basis within 18 (eighteen) months from the date of this Agreement.

КОМПАНИЯ АТЕРРА, в качестве Управляющего Месторождением, действует на основании принципа максимальных усилий для успешной продажи или разработки Месторождения в течение 18 (восемнадцати) месяцев с даты заключения настоящего Соглашения.

SECTION 3.2 Prospect. ATERRA is designated:

РАЗДЕЛ 3.2 Месторождение. КОМПАНИЯ АТЕРРА, будет выступать в качестве лица, которое:

A. To hold for investment appreciation the Lease;

A. Владеет Участком за инвестиционное вознаграждение;

B. To upgrade and update the acreage underlying the Lease with geoscience

B. Модернизирует и корректирует площадь Участка, составляющую

substantiation and any other value added information that ATERRA may deem necessary, all of which make up the Prospect;

часть Месторождения, на основе геофизических данных и посредством использования профессиональных знаний необходимых для разработки Месторождения;

C. To search for potential purchasers of the Prospect, including: preparation of marketing materials; coordination of the selling of the Prospect;

C. Осуществляет поиск потенциальных покупателей Месторождения, включая подготовку маркетинговых материалов, согласование условий продажи Месторождения;

D. To engage in such other incidental activities to any of the foregoing purposes to be necessary or desirable.

D. Или, в случае необходимости и целесообразности, осуществляет любую другую связанную с этим деятельность.

It is intended to assemble and hold for investment appreciation said Prospect for potential sale to third parties for cash, carried or back-in interests, royalties or other interests, or the drilling and production of the Prospect or such other development or some combination thereof.

Планируется объединить и владеть данным Месторождением за инвестиционное вознаграждение для целей: потенциальной продажи третьим лицам за наличные, процентное вознаграждение, роялти или иной тип вознаграждения; проведения буровых и производственных работ по добыче полезных ископаемых на Месторождении; или проведения иных работ или комплексов иных работ по разработке Месторождения.

SECTION 3.3 <u>Management of the Prospect</u>. ATERRA is designated as the Manager of the Prospect. The Manager is responsible for the day-to-day management and ministerial acts for the Prospect as may be necessary, and in accordance of Article VI of this Agreement. ATERRA, as the Manager of the Prospect, shall provide expertise in managing the Prospect on best-efforts basis to successfully sell or develop the Prospect. The Manager shall not engage in any activity that would be financially harmful to the Prospect.

РАЗДЕЛ 3.3 <u>Управление Месторождением</u>. Стороны настоящим назначают КОМПАНИЮ АТЕРРА Управляющим Месторождения. Управляющий ответсвенен за управление повседневной деятельностью, и осуществление действий во исполнение обязанностей Управляющего Месторождения в случае необходимости, а также в соответствии со Статьей VI настоящего Соглашения. КОМПАНИЯ АТЕРРА в качестве Управляющего предоставляет консультации по управлению Месторождением на основе принципа максимальных усилий для успешной продажи или разработки Месторождения. Управляющий не может участвовать в любой деятельности, которая может нанести финансовый ущерб Месторождению.

SECTION 3.4 <u>Reports</u>. From time to time the Creditor may request work progress reports for the Prospect. ATERRA, as the

РАЗДЕЛ 3.4 <u>Отчеты.</u> Кредитор периодически может запрашивать отчет о статусе работ относительно

Manager of the Prospect, shall submit the reports to the Creditor within 5 (five) days after the receipt of relevant request of the Creditor. Such reports shall be in the form specified in Appendix B to this Agreement.

Месторождения. КОМПАНИЯ АТЕРРА, в качестве Управляющего Месторождения, предоставляет отчеты Кредитору в течение 5 (пяти) дней после получения соответствующего запроса Кредитора. Такие отчеты должны быть составлены по форме, указанной в Приложении В настоящего Соглашения.

Creditor also may request any documentation and information in relation to the Prospect from ATERRA. ATERRA shall provide such information and documentation to the Creditor within 5 (five) days after the receipt of Creditor's request.

Кредитор также может запрашивать любые документы и информацию в отношении Месторождения у КОМПАНИИ АТЕРРА. КОМПАНИЯ АТЕРРА предоставляет такую информацию и документы Кредитору в течения 5 (пяти) дней после получения соответствующего запроса.

## ARTICLE IV
## EXPIRATION OF EFFECTIVE PERIOD

## СТАТЬЯ IV
## ИСТЕЧЕНИЕ СРОКА ДЕЙСТВИЯ

SECTION 4.1 Expiration of Effective Period.

РАЗДЕЛ 4.1. Истечение Срока Действия:

A. In case of expiration of the Effective Period due to the event specified in Point A of Section 2.4 (expiration of 18 (eighteen) months period) ATERRA shall repay to the bank account of the Creditor the Funds plus Interest within 15 (fifteen) days after the last date of the Effective Period.

A. В случае истечения Срока Действия в связи с наступлением события, указанного в Пункте А Раздела 2.4 (истечение 18 (восемнадцати) месяцев) КОМПАНИЯ АТЕРРА перечисляет на расчетный счет Кредитора Денежные Средства, а также Процент в течение 15 (пятнадцати) дней после истечения последнего дня Срока Действия.

B. In case of expiration of the Effective Period due to the event specified in Point B of Section 2.4 (sale of the entire Lease to any third party):

B. В случае истечения Срока Действия в связи с наступлением события, указанного в Пункте В Раздела 2.4 (продажа всего или части Участка в пользу любого третьего лица):

i. ATERRA shall repay to the bank account of the Creditor the Funds plus Interest within 15 (fifteen) days after the date of agreement formalising the sale of the Lease to third party;

i. КОМПАНИЯ АТЕРРА перечисляет на счет Кредитора Денежные Средства, а также Процент в течение 15 (пятнадцати) дней после даты заключения договора купли-продажи Участка в пользу третьего лица;

ii. Net Proceeds shall be distributed per the Parties' respective Sharing Ratios as follows:

ii. Чистый Доход распределяется каждой из Сторон в соответствии со следующим Коэффициентом Участия в

Прибыли:

- The Creditor - 53% of the Net Proceeds; and
- ATERRA - 47% of the Net Proceeds.

- Кредитор - 53% Чистого Дохода; и
- КОМПАНИЯ АТЕРРА – 47% Чистого Дохода.

For the avoidance of doubt in case the Prospect is sold partially the Net Proceeds from each such transaction shall be paid within fifteen (15) days from the date of agreement formalising the sale of the Lease to third party.

Во избежание сомнений, если Месторождение было продано по частям, то Чистый Доход будет выплачиваться в течение 15 (пятнадцати) дням с даты заключения договора купли-продажи каждой части Участка в пользу третьего лица.

C. In case of expiration of the Effective Period due to the event specified in Point C of Section 2.4 (execution of the separate participation agreement and a joint operating agreement) ATERRA shall repay to the bank account of the Creditor the Funds plus Interest within 5 (five) days after the last date of the Effective Period.

C. В случае истечения Срока Действия в связи с наступлением события, указанного в Пункте С Раздела 2.4 (заключение отдельного соглашения об участии и соглашения о совместной деятельности) КОМПАНИЯ АТЕРРА перечисляет на расчетный счет Кредитора Денежные Средства, а также Процент в течение 5 (пяти) дней после истечения последнего дня Срока Действия.

SECTION 4.2 Calculation of Net Proceeds. Amount of Net Proceeds subject to distribution between the Parties shall be calculated in accordance with the following formula:

РАЗДЕЛ 4.2 Расчет Чистого Дохода. Сумма Чистого Дохода, подлежащего распределению между Сторонами рассчитывается на основании следующей формулы:

Net Proceeds = (price of the acre paid by the third party purchased - purchase price of the acre paid by ATERRA within the purchase of the Lease) X amount of acres sold to the third party purchaser - Closing Costs.

Чистый доход = (цена за один акр земли, уплаченная третьим лицом при покупке Участка – цена за один акр земли, уплаченная КОМПАНИЕЙ АТЕРРА при покупке Участка) X количество акров земли, проданных третьему лицу – Расходы на Завершение Сделки.

For the avoidance of doubt any other expenses incurred by ATERRA in connection with this Agreement, the Prospect, the Lease shall be bourne by ATERRA and shall not affect the amount of Net Proceeds.

Во избежание сомнений, любые другие издержки, понесенные КОМПАНИЕЙ АТЕРРА в связи с настоящим Соглашением, Месторождением, Участком должны быть оплачены КОМПАНИЕЙ АТЕРРА и не влияют на размер Чистого Дохода.

SECTION 4.3 Closing Costs. Closing Costs shall be paid by ATERRA only in case such Closing Costs were approved in advance

РАЗДЕЛ 4.3. Расходы на Завершение Сделки. Расходы на Завершение Сделки должны уплачиваться КОМПАНИЕЙ



by the Creditor in writing. If any Closing Costs were paid without the approval of the Creditor such costs shall not be treated as Closing Costs and shall not affect the amount of Net Proceeds.

АТЕРРА только в случае, если такие Расходы на Завершение Сделки были предварительно письменно одобрены Кредитором. В случае если Расходы на Завершение Сделки были уплачены без одобрения Кредитора, то такие расходы не должны рассматриваться как Расходы на Завершение Сделки и не влияют на размер Чистого Дохода.

Closing Costs shall be splitted between ATERRA and the Creditor in accordance with the Sharing Ratios.

Расходы на Завершение Сделки должны распределяться между КОМПАНИЕЙ АТЕРРА и Кредитором в соответствии с Коэффициентом Участия в Прибыли.

## ARTICLE V
## PURCHASE OFFER

SECTION 5.1 Purchase offer. In the event that ATERRA receives an offer to purchase all or any portion of the Prospect, and ATERRA is willing to accept the offer, then ATERRA shall immediately provide written notice to the Creditor disclosing the terms and conditions of the sale (the "**Sale Notice**"). ATERRA shall accept the offer only with the Creditor's written acceptance and approval of the Sale Notice.

## СТАТЬЯ V
## ПРЕДЛОЖЕНИЕ О ПОКУПКЕ

РАЗДЕЛ 5.1 Предложение о Покупке. В случае если КОМПАНИЯ АТЕРРА получит предложение о покупке всего или части Месторождения, и у КОМПАНИИ АТЕРРА будет намерение продать Предлагаемое Месторождение, то КОМПАНИЯ АТЕРРА будет обязана немедленно направить письменное уведомление Кредитору с описанием всех условий продажи ("**Уведомление о Продаже**"). КОМПАНИЯ АТЕРРА имеет право продать все или часть Месторождения только в случае, если Кредитори одобрил Уведомление о Продаже в письменном виде.

## ARTICLE VI
## MANAGEMENT AND OPERATIONS OF THE PROSPECT

SECTION 6.1 Manager. The operations of the Prospect shall be administered as follows:

A. The business relationship between Parties shall have no employees, but the Manager may employ contractors or agents as reasonably required to carry out the purposes of the Prospect;

B. The Manager shall have the power and authority on behalf of the Parties to manage, control, administer and operate the business affairs and

## СТАТЬЯ VI
## УПРАВЛЕНИЕ И ЭКСПЛУАТАЦИЯ МЕСТОРОЖДЕНИЯ

РАЗДЕЛ 6.1 Управляющий. Управление деятельностью Месторождения осуществляется следующим образом:

A. Деловое сотрудничество между сторонами не подразумевает наем персонала, но Управляющий может нанимать подрядчиков или агентов, разумно необходимых в целях Месторождения.

B. Управляющий вправе от имени Сторон управлять, контролировать, администрировать и вести деятельность Месторождения, а

DS

properties of the Prospect and to do or cause to be done any and all acts deemed by the Manager to be necessary or appropriate thereto, and the scope of such power and authority shall encompass all matters in any way connected with such business or incident thereto, including but not limited to, the power and authority:

также управлять собственностью Месторождения, совершать действия, которые Управляющий сочтет необходимыми или приемлемыми. Полномочия Управляющего распространяются на все вопросы, связанные с данной деятельностью, включая, но не ограничиваясь, следующими полномочиями:

i. to acquire leases, to market and sell assembled leasehold positions to third parties, to package materials pertinent to such effort and otherwise act for the Prospect with respect to such Lease in accord with the terms of this Agreement;

i. приобретать Участки, предлагать к продаже и продавать третьим лицам участки, собирать материалы для данных целей и действовать в интересах Месторождения в отношении Участка в соответствии с условиями настоящего Соглашения;

ii. to enter into and execute all contracts and other agreements and any and all other instruments or documents considered by the Manager to be necessary or appropriate to carry on and conduct the business, for such consideration and on such terms as the Manager in its sole discretion may determine;

ii. подписывать и исполнять любые договоры и иные соглашения, или документы, необходимые, с точки зрения Управляющего, для ведения деятельности на Месторождении на условиях и за вознаграждение, определенные по усмотрению Управляющего;

iii. subject to Point A above to engage agents, employees, accountants, lawyers, brokers, consultants and all other professionals, clerical help and such other assistance services as the Manager may deem proper and to pay thereof or such remuneration as the Manager may determine to be reasonable and appropriate;

iii. с учетом пукта А выше, нанимать агентов, служащих, бухгалтеров, адвокатов, брокеров, консультантов и других профессионалов, офисных и иных работников и выплачивать вознаграждение по усмотрению Управляющего;

iv. to enter into any agreements for sharing of profits, joint venture or partnerships with any person, firm, corporation, government or agency thereof engaged in any business or transaction which the Parties and its Prospect are authorized to engage in, or in any business or transaction capable of being conducted so as to directly or indirectly benefit the Prospect;

iv. вступать в любые соглашения о разделе прибыли, совместные предприятия или товарищества с любым лицом, фирмой, корпорацией, органом власти или агентством, ведущим любые виды деятельности, которые уполномочены вести Стороны на Месторождении, заключать любые сделки, прямо или косвенно выгодных для Месторождения;



v. to sell, assign, convey or otherwise dispose of, for such consideration and upon such terms and conditions as the Manager may determine, all or any part of the Prospect's assets, any interest therein, or any interest payable therefrom, and in connection therewith to execute and deliver such deeds, assignments and conveyances containing such warranties as the Manager shall determine, subject to providing the Creditor with notice as provided for in Article V herein.

v. продавать, передавать или иначе распоряжаться всеми активами Месторождения или их частью, любыми долями или правами требования, на условиях и за вознаграждение, определяемыми по усмотрению Управляющего, а также заключать связанные с этим соглашения, передавать права, давать гарантии по усмотрению Управляющего, при условии уведомления Кредитора в соответствии со статьей V данного Соглашения;

vi. to make and enter into such agreements and contracts with such parties and to give such receipts, releases and discharges with respect to any and all of the foregoing and any matters incident thereto as the Manager may deem advisable or appropriate;

vi. заключать соглашения и договоры со сторонами, выдавать расписки, гарантии по любым вопросам, которые целесообразны или необходимы по усмотрению Управляющего.

In accomplishing all of the foregoing, the Manager may, in its discretion, use its own personnel, properties and equipment or those of any of its affiliates or the Manager may hire third parties.

При совершении всех упомянутых действий Управляющий по своему усмотрению может использовать персонал, собственность и оборудование Управляющего или аффилированных лиц или Управляющий может нанять третьих лиц.

C. The Manager shall not engage in any activity that would be financially harmful to the Prospect.

C. Управляющий не может участвовать в любой деятельности, которая может нанести финансовый ущерб Месторождению.

## ARTICLE VII TERMINATION OF THE AGREEMENT

## СТАТЬЯ VII ПРЕКРАЩЕНИЕ ДЕЙСТВИЯ СОГЛАШЕНИЯ

SECTION 7.1 Termination. Subject to Section 7.2 the Agreement shall be effective until the Parties fulfill all their respective obligations procurred in this Agreement. Upon termination of the Agreement in order to effectuate an orderly termination, the Parties agree to execute an agreement reflecting the orderly discharge of all obligations and distributions and that the Parties agree that the purpose of the

РАЗДЕЛ 7.1 Прекращение действия Соглашения. Настоящее Соглашение имеет юридическую силу до выполнения Сторонами своих обязательств по настоящему Соглашению (с учетом положений Раздела 7.2). После прекращения действия Соглашения, Стороны соглашаются заключить соглашение о заблаговременном исполнении всех

DS

Agreement has been exhausted and further that the Agreement ceases to exist.

обязательств и распределений, и что Стороны соглашаются о достижении цели Соглашения и о дальнейшем его прекращении.

SECTION 7.2 Failure to comply with the Agreement. In case ATERRA fails to comply with any of its obligations procurred in the Agreement the Creditor may immediately after such failure claim the payment of the Funds, Interest and all other payments in accordance with this Agreement.

РАЗДЕЛ 7.2 Неисполнение положений Соглашения. В случае если КОМПАНИЯ АТЕРРА не исполнит любые свои обязательства предусмотренные настоящим Соглашением Кредитор может требовать возврата Денежных средств, уплаты Процента и других выплат в соответствии с настоящим Соглашением немедленно после такого неисполнения.

## ARTICLE VIII CONFLICT RESOLUTION

## СТАТЬЯ VIII УРЕГУЛИРОВАНИЕ СПОРОВ

SECTION 8.1 Agreement to Use Mediation/Arbitration Procedure. If any dispute arises relating to this Agreement or any other agreements, contracts or any other transaction between the Parties (the "**Dispute**"), the Parties agree that the dispute shall be submitted to non-binding mediation in an effort to resolve the dispute.

РАЗДЕЛ 8.1 Согласие Использовать Процедуру Посредничества / Арбитража. При возникновении споров в отношении данного Соглашения или других соглашений, договоров или других сделок между Сторонами («**Спор**»), Стороны соглашаются использовать для решения спора юридически необязательную процедуру посредничества.

A. Initiation of Procedure. The initiating Party shall give written notice to the other Party, describing the nature of the Dispute, its claim for relief and identifying one or more individuals with authority to resolve the Dispute on such Party's behalf. The other Party shall have five (5) business days within which to designate in writing one or more individuals with authority to resolve the Dispute on such Party's behalf.

A. Инициирование Процедуры. Инициирующая Сторона дает письменное уведомление другой Стороне, описывая сущность Спора, свое требование разрешить его, с указанием ряда должностных лиц, обладающих полномочиями решить Спор от имени такой Стороны. Другой Стороне предоставляется пять (5) рабочих дней для того, чтобы указать в письменном виде одного или более лиц с полномочиями решить Спор от имени такой Стороны.

B. Selection of Mediator. Within ten (10) business days from the date of designation, the Parties shall make a good faith effort to select a person to mediate the Dispute. If no mediator has been selected under this procedure, the Parties shall jointly request a State District Court Judge or Federal District Judge of their choosing (or if they

B. Выбор Посредника. В течение десяти (10) рабочих дней с даты назначения уполномоченных лиц Стороны, действуя добросовестно, должны выбрать одно лицо для посредничества в Споре. Если в ходе данной процедуры посредник не был выбран, Стороны совместно

DS

cannot agree, the President of the San Antonio Bar Association) to supply within ten (10) business days a list of potential qualified attorney/mediators. Within five (5) business days of receipt of the list, the Parties shall rank the proposed mediators in numerical order of preference, simultaneously exchange such list, and select as the mediator the individual receiving the highest combined ranking. If such mediator is not available to serve, they shall proceed to contact the mediator who was next highest in ranking until they successfully select an available mediator.

просят о назначении посредника Окружного Судью Штата или Судью Федерального Округа (или, если они не могут прийти к соглашению, президента Ассоциации юристов г. Сан-Антонио), который в течение десяти (10) рабочих дней предоставляет список потенциальных квалифицированных поверенных / посредников. В течение пяти (5) рабочих дней после получения списка Стороны указывают предложенные кандидатуры списком в порядке предпочтения, одновременно обмениваются такими списками и выбирают в качестве посредника лицо, получившее самый высокий совокупный рейтинг. Если такой посредник не доступен, они связываются с лицом, стоящим в рейтинге на второй позиции, и так далее, до успешного выбора доступного посредника.

C. Time and Place for Mediation; Parties Represented. In consultation with the mediator selected, the Parties shall promptly designate a mutually convenient time and place for the mediation, such time to be no later than thirty (30) days after selection of the mediator. If the Parties cannot agree on a convenient place for the mediation, the mediator shall select the place for mediation. In the mediation, each Party shall be represented by persons with authority and discretion to negotiate a resolution of the Dispute, and may be represented by counsel.

C. Время и Место Посредничества; Представленные Стороны. При проведении консультаций с выбранным посредником Стороны должны незамедлительно определить взаимно удобное время (не позднее тридцати (30) дней после выбора Посредника) и место Посредничества. Если Стороны не могут договориться об удобном месте для Посредничества, Место Посредничества выбирает Посредник. При проведении процедуры Посредничества каждая Сторона должна быть представлена лицами, имеющими полномочия и компетентность для проведения переговоров и разрешения Спора, и может быть представлена юридическим консультантом.

D. Conduct of Mediation. The mediator shall determine the format for the meetings, and the mediation session shall be private. The mediator will keep confidential all information learned in

D. Проведение Посредничества. Посредник определяет формат совещаний, совещания проводятся в закрытом режиме. Посредник сохраняет

private caucus with any Party unless specifically authorized by such Party to make disclosure of the information to the other Party. The Parties agree that the mediation shall be governed by the provisions of Chapter 154 of the Tex. Civ. Prac. & Rem. Code and such other rules as the mediator shall prescribe.

конфиденциальность всей информации, ставшей ему известной в отношении любой из Сторон, если только такой Стороной не разрешено раскрытие такой информации, являющейся юридически обязательной для другой Стороны. Стороны соглашаются, что Посредничество регулируется положениями Главы 154 Гражданско-процессуального Кодекса Штата Техас и иными правилами, определенными Посредником.

E. Fees of Mediator. Disqualification. The fees and expenses of the mediator shall be shared equally by the Parties. The mediator shall be disqualified as a witness, consultant, expert or counsel for any Party with respect to the Dispute and any related matters.

E. Вознаграждение Посредника. Дисквалификация. Вознаграждение и расходы Посредника делятся поровну Сторонами. Посредник дисквалифицируется как свидетель, консультант, эксперт или советник относительно любой Стороны в отношении Спора и связанных вопросов.

F. Enforcement of Breach of Mediation Provisions. In the event any Party shall refuse or not participate in the mediation it shall be considered a breach of the Agreement and the refusing or non-participating Party shall be deemed to have waived any rights or claims that could result from the filing of a legal action in a state or federal court.

F. Действия в Случае Нарушения Условий Посредничества. Отказ или неучастие в Посредничестве любой из Сторон считается нарушением Соглашения, и Сторона, допустившая отказ или неучастие, считается отказавшейся от своих прав или требований, что может повлечь за собой подачу иска в федеральный суд или суд Штата.

G. Specific Performance. The non-breaching Party may apply to a court of competent jurisdiction for specific enforcement of the mediation and arbitration procedures set forth herein. The breaching Party shall pay all costs and expenses of such breach to the non-breaching Party or Parties, including attorney's fees, travel expenses and mediator fees.

G. Реальное Исполнение. Ненарушившая Сторона может обратиться в уполномоченный суд для осуществления Посредничества в обязательном порядке и арбитражных процедур, как указано в данном документе. Нарушившая Сторона обязана оплатить все затраты и расходы, понесенные вследствие нарушения ею процедуры Посредничества, ненарушившей Стороне, включая судебные издержки, дорожные расходы и вознаграждение Посредника.

DS

H. Punitive Damages/Costs. The non-participating Party hereby waives and relinquishes all claims of treble, punitive damages or similar damages or claims of irreparable harm concerning the dispute in question, and further waives all objections to the non-breaching Party or Parties claim of treble, punitive or similar damages or claims of irreparable harm concerning said dispute. The breaching Party shall pay all other actual and special damages to the non-breaching Parties as a result of such breach.

H. Штрафные Убытки / Расходы. Неучаствующая в Посредничестве Сторона настоящим отказывается от прав и отзывает свои требования по уплате тройных издержек и штрафных санкций или подобных выплат по требованиям о нанесении непоправимого вреда относительно рассматриваемого спора, отказывается от всех возражений ненарушившей Стороне или Сторонам при уплате издержек в тройном размере и штрафных убытков или подобных выплат по требованиям о нанесении непоправимого вреда относительно рассматриваемого спора. Нарушившая Сторона обязана оплатить все фактические и принудительные затраты ненарушившей Стороне, понесенные в результате такого нарушения.

SECTION 8.2 Binding Arbitration. If a dispute arises out of or relates to any agreements, contracts, or any other transaction between the Parties and if said dispute cannot be settled through direct discussions, the Parties agree to first endeavor to settle the dispute in an amicable manner by mediation as set forth above, before resorting to arbitration. Thereafter, any unresolved controversy or claim shall be settled solely by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The Parties agree to execute a written Arbitration Agreement (requiring binding arbitration and setting forth in detail procedures for arbitration) within five (5) business days of the close of any unsuccessful mediation proceeding. If the Parties cannot agree on the terms of a binding Arbitration Agreement, such agreement shall be prepared and submitted to each Party by the mediator and such agreement shall be binding on all Parties as to all arbitration procedures. Any such agreement must restrict discovery only to matters directly connected to the dispute and shall be limited to written questions containing no more than fifty (50) questions

РАЗДЕЛ 8.2 Арбитражное Разбирательство, Имеющее Обязательную Силу (Обязательный Арбитраж). Если спор возникает или имеет отношение к соглашениям, договорам или другим сделкам между Сторонами и если указанный спор не может быть урегулирован путем прямых переговоров, Стороны соглашаются уладить спор в духе доброжелательности через процедуру посредничества, как указано выше, прежде чем обратиться в арбитраж. Нерешенное противоречие или требование решаются исключительно арбитражем в соответствии с Правилами Коммерческого Арбитража Американской Арбитражной Ассоциации, и решение по выплате вознаграждения, вынесенное арбитром(ами), передается в любой суд соответствующей юрисдикции. Стороны соглашаются исполнить письменное Соглашение об обязательном арбитраже (требующее обязательного арбитража и подробно излагающее процедуру проведения арбитража) в течение пяти (5) рабочих дней после неудачного завершения посредничества. Если Стороны не могут договориться об условиях

DS

(including parts and subparts).

Соглашения об обязательном арбитраже, такое соглашение должно быть подготовлено и представлено каждой Стороне посредником, и связывать все Стороны по всем арбитражным процедурам. Такое соглашение касается только вопросов, непосредственно связанных со спором, и ограничивается письменным списком, содержащим не более пятидесяти (50) вопросов (включая части и подразделы).

The arbitration proceeding shall be completed no later than ninety (90) days after the conclusion of an unsuccessful mediation. Both Parties acknowledge that time is of the essence in resolving any Dispute.

Проведение арбитража должно быть закончено не позднее девяноста (90) дней после неудачного окончания посредничества. Обе Стороны признают существенную важность времени при решении Споров.

SECTION 8.3 Enforcement of Breach of Mediation/Arbitration. In the event any Party shall breach the terms of this section regarding mediation and arbitration, the Parties agree the following shall occur:

РАЗДЕЛ 8.3 Действия в Случае Нарушения Посредничества/Арбитража. В случае если Сторона нарушит условия данного раздела относительно посредничества и арбитража, Стороны соглашаются на следующие действия:

A. The non-breaching Party may apply to a court of competent jurisdiction for specific enforcement of the mediation and arbitration procedures set forth herein;

A. Ненарушившая Сторона может обратиться в суд надлежащей юрисдикции для принудительного осуществления посредничества и арбитражных процедур, как указано в данном документе;

B. The breaching Party shall pay all costs and expenses of such breach to the non-breaching Party or Parties, including attorney's fees, travel expenses and mediator fees;

B. Нарушившая Сторона обязана оплатить все затраты и расходы, понесенные вследствие нарушения ею процедуры посредничества, ненарушившей Стороне или Сторонам, включая судебные издержки, дорожные расходы и вознаграждение посредника;

C. The breaching Party hereby waives and relinquishes all claims of treble, punitive or similar damages or claims of irreparable harm concerning the dispute in question and further waives all objections to the non-breaching Party or Parties' claim of treble, punitive or similar damages or claims of irreparable harm concerning said dispute; and

C. Нарушившая Сторона отказывается от прав и отзывает свои требования по уплате тройных издержек и штрафных санкций или подобных выплат по требованиям о нанесении непоправимого вреда относительно рассматриваемого спора, отказывается от всех возражений ненарушившей

DS

Стороне или Сторонам при уплате тройных издержек и штрафных санкций или подобных выплат по требованиям о нанесении непоправимого вреда относительно рассматриваемого спора; и

D. The breaching Party shall pay all other actual and special damages to the non-breaching Parties as a result of such breach.

D. Нарушившая Сторона обязана оплатить все фактические и принудительные затраты ненарушившей Стороне, понесенные в результате такого нарушения

## ARTICLE IX GENERAL PROVISIONS

## СТАТЬЯ IX ОБЩИЕ ПОЛОЖЕНИЯ

SECTION 9.1 Individual activities of the Parties. This Agreement has no relation to any operations conducted by any individual Party as an individual or jointly with others, provided that no Party shall participate in any activity, as an individual or jointly with others, where such participation would be contrary to the purposes of activities under, or in violation of this Agreement.

РАЗДЕЛ 9.1 Самостоятельные действия Сторон. Данное Соглашение не имеет отношения к действиям, совершаемым отдельной Стороной самостоятельно или совместно с другими, при условии, что ни одна из Сторон не будет участвовать в действиях, самостоятельно или совместно с другими, в случае если такое участие противоречит целям настоящего Соглашения.

SECTION 9.2 Rights and responsibilities of Parties. Where this Agreement is silent, the provisions of Title 4 of the Texas Business Organizations Code or any recodification of such Title, as amended from time to time shall govern the conduct and the relationship and duties of the Parties.

РАЗДЕЛ 9.2 Права и обязанности Сторон. Вопросы, на которые данное Соглашение не распространяется, регулируются положениями Статьи 4 Кодекса Коммерческих Организаций Техаса или интерпретацией данной статьи с учетом внесенных поправок, регулирующих деятельность, отношения и обязанности Сторон.

SECTION 9.3 Further assurances. From time at the request of any Party to this Agreement and without further consideration, the other Party or Parties shall execute and deliver to such requesting Party such instruments and documents and take such other action (but without incurring any material financial obligation) as such requesting Party may reasonably request in order to consummate more fully and effectively the intent of this Agreement.

РАЗДЕЛ 9.3 Дальнейшие гарантии. По требованию любой Стороны по данному Соглашению и без дальнейшего рассмотрения другая Сторона или Стороны должны выполнить и предоставить запросившей Стороне разумно запрошенные ею соглашения и документы, совершить иные действия (но без существенных финансовых обязательств) в целях более полного и эффективного осуществления целей данного Соглашения.

DS

SECTION 9.4 Notices. Wherever this Agreement provides for notice, such notice shall be in writing and shall be delivered to a Party at its notice address, either by (a) electronic mail, (b) delivered personally (with receipt) (c) transmitted by first class registered or certified mail, postage prepaid, return receipt requested, (d) sent by a recognized prepaid overnight courier service (which provides a receipt), or (e) sent by facsimile with receipt acknowledged to the Parties at the following addresses (or at such other addresses as shall be specified by the Parties by like notice):

РАЗДЕЛ 9.4 Уведомления. Во всех случаях, когда настоящим Соглашением предусматривается отправка уведомления, такое уведомление оформляется в письменной форме и направляется Стороне по адресу направления уведомлений (а) электронной почтой, (б) вручается лично (с подтверждением вручения), (в) передается зарегистрированной и сертифицированной почтовой службой первого класса, предварительно оплаченным письмом с требованием возвратить подтверждение получение, (г) направляется заказной курьерской экспресс-почтой (с подтверждением вручения), или (д), направляется факсимильной связью с получением, подтвержденным Сторонами по следующим адресам (или другим адресам, указанным Сторонами для подобных уведомлений)

If to the Creditor:

Nikolai Rastorguev
Gidrostroiteli Street # 28, Apt. # 9
350065, Krasnodar City,
Russian Federation
Phone: 011-7-961-595-99-99 or 011-7-915-066-32-63
Email: dir@kinomonitork.ru

При отправке Кредитору:

Николай Растогуев
Улица Гидростроителей 28, кв. 9
350065, город Краснодар,
Российская Федерация
Телефон: 011-7-961-595-99-99 или 011-7-915-066-32-63
E-mail: dir@kinomonitork.ru

If to ATERRA:

Aterra Exploration, LLC
Attn: David Sepiachvili
230 West 56th Street, Suite 53D
New York, NY 10019
Phone: 516-456-9411
Email: david@aterraexploration.com

При отправке КОМПАНИИ АТЕРРА:

Атерра Иксплорейшн, ЛЛС (Aterra Exploration, LLC)
Вниманию: Давид Сепиашвили/ David Sepiashvili
56 Вест Стрит, дом 230, кв. 53D
Нью-Йорк, NY 10019
Телефон: 516-456-9411
Электронная почта: david@aterraexploration.com

Any communication so addressed and mailed shall be deemed to be given when so mailed, and any notice so sent by telecopy or email shall be deemed to be given when receipt of such transmission is acknowledged or confirmed, and any communication so delivered in person shall be deemed to be given when receipted for by, or actually received.

Вся корреспонденция, направленная по указанным адресам, считается врученной при отправке способом, указанным выше, и любое уведомление, посланное факсимильной связью или электронной почтой, считается врученным при получении подтверждения передачи. Корреспонденция, вручаемая лично,

DS

считается врученной при получении подтверждения получения.

SECTION 9.5 Conflict of interest. It is understood and agreed by the Creditor that ATERRA and/or its affiliates intend to assemble additional leasehold interests in the Eagle Ford Shale Play with other investors for the resale or exploration and development thereof, and nothing in this Agreement shall be construed to prevent ATERRA, its affiliates, nor any other party from the investment in or management of any other oil and gas related business or other non-related business owned individually or with others. Each Party is free to engage in any oil and gas related business or investment with or without the involvement of other Party of this Agreement, and in relation to this Agreement shall have the right to engage in a business outside of AMI that is in conflict with this Agreement.

РАЗДЕЛ 9.5 Конфликт интересов. Кредитор понимает и выражает свое согласие, что КОМПАНИЯ АТЕРРА и/или ее аффилированные лица намереваются объединить свои права в Нефтегазовом Месторождении Игл Форд с другими инвесторами для перепродажи и/или изысканий и разработки, и ничто в этом Соглашении не считается препятствием для инвестиций или управления КОМПАНИЕЙ АТЕРРА и ее афилированными лицами другими месторождениями нефти или газа, осуществления другой связанной или не связанной с нефтедобычей деятельности, самостоятельно или с другими субъектами хозяйственной деятельности. Каждая Сторона имеет право участвовать в связанной с нефтедобычей деятельности и инвестировать с участием или без участия Сторон настоящего Соглашения, и применительно к настоящему Соглашению, участвовать в любой деятельности за пределами ОВИ, противоречащей настоящему Соглашению.

SECTION 9.6 Third person. Nothing herein expressed or implied is intended or shall be construed to confer upon or to give any Person not a Party hereto any rights or remedies under or by reason of this Agreement.

РАЗДЕЛ 9.6 Третье лицо. Ничто в настоящем Соглашении прямо или косвенно не наделяет какое-либо лицо, не являющееся одной из Сторон, какими бы то ни было правами по данному Соглашению.

SECTION 9.7 Survival of agreements. All representations and warranties and all covenants and agreements herein shall survive the execution of this Agreement.

РАЗДЕЛ 9.7 Сохранение обязательств. Все заверения и гарантии и обязательства сохраняют свою силу после исполнения настоящего Соглашения.

SECTION 9.8 Amendments and waivers. Any provision of this Agreement may be amended or waived if, but only if such amendment or waiver is in writing and is signed by all of the Parties hereto.

РАЗДЕЛ 9.8 Поправки и отказ от прав. Любое положение этого Соглашения может быть изменено или отменено, но только в письменной форме за подписью всех Сторон.

SECTION 9.9 Successors and assigns. This Agreement shall be binding on and shall inure to the benefit of the successors and assigns of the Parties hereto. This

РАЗДЕЛ 9.9 Правопреемники. Данное Соглашение является юридически обязательным и сохраняет свою юридическую силу в отношении

DS

Agreement shall not be assigned by any Party hereto without the express prior written consent of the other Party.

правопреемников Сторон. Настоящее Соглашение не может быть предметом уступки без предварительного явно-выраженного письменного согласия Сторон настоящего Соглашения.

SECTION 9.10 Titles of articles, sections and subsections. All titles or headings to srticles, sections, subsections or other divisions of this Agreement or the appendixes, exhibits or schedules hereto are only for the convenience of the Parties and shall not be construed to have any effect or meaning with respect to the other content of such articles, sections, subsections or other divisions or such appendixes, exhibits or schedules, such other content being controlling as to the Agreement between the Parties hereto.

РАЗДЕЛ 9.10 Названия статей, разделов и подразделов. Все названия или заголовки статей, разделов и подразделов или иных частей данного Соглашения или приложений к нему предназначены для удобства Сторон и не должны рассматриваться как имеющие юридическую силу или значение относительно содержания таких статей, разделов и подразделов или частей данного Соглашения, Приложений к нему; остальная часть текста считается передающей содержание Соглашения между Сторонами.

SECTION 9.11 Counterparts. This Agreement may be executed in multiple counterparts; each counterpart shall be deemed an original, but all counterparts together shall constitute one and the same instrument.

РАЗДЕЛ 9.11 Копии. Настоящее Соглашение может быть оформлено в нескольких экземплярах. Каждый экземпляр считается оригиналом. Все экземпляры вместе составляют один и тот же договор.

SECTION 9.12 Confidentiality. The Parties agree to keep this Agreement, its terms and conditions strictly CONFIDENTIAL. The Creditor and ATERRA shall not, while this Agreement is in effect or at any time after its expiration or termination for any reason, disclose to any third party without prior written consent from ATERRA, any information supplied to it that ATERRA designates as confidential or proprietary, or that is not generally available to the public.

РАЗДЕЛ 9.12 Конфиденциальность Стороны соглашаются, что данное Соглашение и его условия СТРОГО КОНФИДЕНЦИАЛЬНЫ. Кредитор и КОМПАНИЯ АТЕРРА не имеют права в течение срока действия Соглашения или после его истечения или расторжения по любой причине раскрывать третьим лицам без предварительного письменного согласия КОМПАНИИ АТЕРРА любую предоставленную им информацию, которую КОМПАНИЯ АТЕРРА определила как конфиденциальную или не подлежащую раскрытию третьим лиц.

SECTION 9.13 Governing law. The Parties agree that this Agreement and the rights and obligations of the Parties in connection with the transactions evidenced in part by this agreement shall be construed in accordance with and governed by the laws of the state of Texas, without reference to

РАЗДЕЛ 9.13 Применимое право. Стороны соглашаются, что данное Соглашение, права и обязательства Сторон по сделкам, осуществленным в соответствии с данным Соглашением, регулируются согласно законам штата Техас, независимо от коллизии норм

DS

conflicts of laws, rules or principles of the State of Texas. The Parties agree that venue for any action that may be brought in connection with the enforcement of this Agreement shall be in San Antonio, Bexar County, Texas, United States of America. This provision shall survive termination of this Agreement.

права, правил или законодательных норм штата Техас. Стороны соглашаются, что местом проведения судебных заседаний и исполниетельного производства по данному соглашению является г. Сан-Антонио, округ Бексар, Техас, Соединенные Штаты Америки. Данное условие сохраняет свою силу после истечения срока действия данного Соглашения.

SECTION 9.14 Waiver of right to trial by jury. The Parties irrevocably waive any and all rights to trial by jury with respect to any legal proceeding arising out of or relating to this Agreement.

РАЗДЕЛ 9.14 Отказ от суда присяжных. Стороны безотзывно отказываются от привлечения присяжных в ходе проведения судебных заседаний и разбирательств по данному Соглашению

SECTION 9.15 Disclaimer of warranties. Other than those expressly set out in this Agreement, ATERRA expressly disclaims any and all representations or warranties with respect to the Prospect or the Agreement, and the Creditor agrees that the Lease shall be deemed "where is" and "as is", with all faults. Specifically as a part of (but not in limitation of) the foregoing, the Creditor acknowledges that ATERRA has not made, and ATERRA expressly disclaims, any representation or warranty (express, implied, under common law, by statute or otherwise) as to the title or condition of the leases in the Prospect. Other than those expressly set out in this agreement, ATERRA makes no representation or warranty as to (a) the amount, value, quality, quantity, volume, or deliverability of any oil, gas, or other minerals or reserves (if any) in, under, or attributable to the leases in the prospect, (b) the ability of the leases in the prospect to produce hydrocarbons, including production rates, decline rates, and recompletion opportunities; (c) the present or future value of the anticipated income, costs, or profits, if any, to be derived from the leases in the prospect; and (d) any other matters contained in or omitted from any information or material furnished to the Creditor by ATERRA. Any data, information, or other records furnished by ATERRA are provided to the Creditor as a convenience, and the Creditor's reliance on or use of the same is at the Creditor's sole

РАЗДЕЛ 9.15 Оговорка в отношении гарантий. Кроме явно изложенного в этом Соглашении, КОМПАНИЯ АТЕРРА отказывается от всех заверений или гарантий относительно Месторождения или Соглашения, и Кредитор соглашается, что участки, "где" и "как есть", приобретаются со всеми недостатками. Как часть вышеизложенного (но не ограничивая его), Кредитор признает, что КОМПАНИЯ АТЕРРА не предоставила и отказалась от заверений или гарантий (явных, подразумеваемых, общим правом, законом или иным) относительно права собственности или состояния участков в пределах Месторождения. Кроме явно изложенных в данном Соглашении, КОМПАНИЯ АТЕРРА не делает заверений или гарантий относительно (а) цены, ценности, качества, количества, объема или добычи нефти, газа или других полезных ископаемых или запасов полезных ископаемых (в случае их наличия) в, под или вблизи участков в пределах месторождения, (б) способности участков в пределах месторождения производить углеводороды и норм производительности, скорости падения пластового давления и возврата на вышележащий горизонт; (в) настоящего или будущего размера предполагаемого дохода, затрат или прибыли, в случае их наличия,

DS

risk.

извлеченных из Месторождения; и (г) других вопросов, включенных в информацию, предоставленную Кредитору КОМПАНИЕЙ АТЕРРА или упущенную ей. Все данные, информация, или другие отчеты, предоставляются Кредитору КОМПАНИЕЙ АТЕРРА для удобства. Использование данной информации и принятие решения на ее основании осуществляется на риск инвестора.

SECTION 9.16 Knowledgeable Investor. EACH AND EVERY PARTY TO THIS AGREEMENT ARE KNOWLEDGEABLE INVESTORS, HAS THE ABILITY TO EVALUATE (AND IN FACT HAS EVALUATED) THE PROSPECT. THE PARTIES ARE "ACCREDITED INVESTORS," AS DEFINED IN REGULATION D PROMULGATED PURSUANT TO THE SECURITIES ACT, AND IS PARTICIPATING IN THIS TRANSACTION FOR ITS OWN ACCOUNT AND NOT WITH THE INTENT TO MAKE A DISTRIBUTION WITHIN THE MEANING OF THE SECURITIES ACT (AND THE RULES AND REGULATIONS PERTAINING THERETO) OR A DISTRIBUTION THEREOF IN VIOLATION OF ANY OTHER APPLICABLE SECURITIES LAWS. IN MAKING THE DECISION TO ENTER INTO THIS AGREEMENT AND TO CONSUMMATE THE TRANSACTIONS, EACH AND EVERY PARTY HAS RELIED ON ITS OWN INDEPENDENT DUE DILIGENCE INVESTIGATION OF THE TRANSACTION AND HAS BEEN ADVISED BY AND HAS RELIED SOLELY ON ITS OWN EXPERTISE AND LEGAL, LAND, TAX, RESERVOIR ENGINEERING, AND OTHER PROFESSIONAL COUNSEL CONCERNING THIS TRANSACTION AND THE VALUE THEREOF.

РАЗДЕЛ 9.16 Информированный Инвестор. КАЖДАЯ СТОРОНА ПО ДАННОМУ СОГЛАШЕНИЮ СЧИТАЕТСЯ ИНФОРМИРОВАННЫМ ИНВЕСТОРОМ, СПОСОБНЫМ ОЦЕНИТЬ (И ОСУЩЕСТВИВШИМ ФАКТИЧЕСКУЮ ОЦЕНКУ) МЕСТОРОЖДЕНИЯ. СТОРОНЫ СЧИТАЮТСЯ «АККРЕДИТОВАННЫМИ ИНВЕСТОРАМИ», КАК ОПРЕДЕЛЕНО В НОРМАТИВЕ D, ОБНАРОДОВАННОМ В ОТНОШЕНИИ ЗАКОНА О ЦЕННЫХ БУМАГАХ, И УЧАСТВУЮЩИМИ В УКАЗАННОЙ СДЕЛКЕ ЗА СВОЙ СОБСТВЕННЫЙ СЧЕТ БЕЗ НАМЕРЕНИЯ ОСУЩЕСТВИТЬ РАСПРЕДЕЛЕНИЕ В РАМКАХ ЗАКОНА О ЦЕННЫХ БУМАГАХ (ПРАВИЛ И ИНСТРУКЦИИ К НЕМУ) ИЛИ РАСПРЕДЕЛЕНИЕ С НАРУШЕНИЕМ ДРУГИХ ПРИМЕНИМЫХ ЗАКОНОВ О ЦЕННЫХ БУМАГАХ. ПРИ ПРИНЯТИИ РЕШЕНИЯ ПРИНЯТЬ ДАННОЕ СОГЛАШЕНИЕ И ОСУЩЕСТВИТЬ СДЕЛКИ КАЖДАЯ СТОРОНА ПОЛАГАЛАСЬ НА СОБСТВЕННУЮ НЕЗАВИСИМУЮ ОЦЕНКУ СДЕЛКИ, КОНСУЛЬТАЦИИ ПО ЮРИДИЧЕСКИМ ВОПРОСАМ, НАЛОГООБЛОЖЕНИЮ, РАЗРАБОТКЕ БАССЕЙНА И ДРУГИЕ ПРОФЕССИОНАЛЬНЫЕ КОНСУЛЬТАЦИИ ОТНОСИТЕЛЬНО ЭТОЙ СДЕЛКИ И ЕЕ ЦЕНЫ

SECTION 9.17 Entire Agreement. THIS AGREEMENT, TOGETHER WITH ITS EXHIBITS, IS THE ENTIRE AGREEMENT AND UNDERSTANDING AMONG THE PARTIES HERETO AND SUPERSEDES ALL PRIOR AGREEMENTS AND UNDERSTANDINGS, BOTH WRITTEN AND ORAL, BETWEEN SUCH PARTIES RELATING TO THE SUBJECT MATTER

РАЗДЕЛ 9.18 Целостность соглашения. ДАННОЕ СОГЛАШЕНИЕ И ПРИЛОЖЕНИЯ К НЕМУ СОСТАВЛЯЮТ ЕДИНОЕ СОГЛАШЕНИЕ, И СТОРОНЫ ПОНИМАЮТ, ЧТО ОНО ЗАМЕНЯЕТ ВСЕ ПРЕДШЕСТВУЮЩИЕ СОГЛАШЕНИЯ, ПИСЬМЕННЫЕ И УСТНЫЕ, МЕЖДУ СТОРОНАМИ В ОТНОШЕНИИ ПРЕДМЕТА ДАННОГО

DS

HEREOF.

СОГЛАШЕНИЯ.

IN WITNESS WHEREOF, the Parties have executed and delivered this Agreement as of the date first written above

В ПОДТВЕРЖДЕНИЕ ВЫШЕИЗЛОЖЕННОГО, Стороны подписали и предоставили настоящее Соглашение в дату указанную ниже:

**Creditor:**
By: ______________________
Nikolai Rastorguev

Date:3 December 2015

**Кредитор:**
______________________
Николай Расторгуев

Дата: 3 декабря 2015

**ATERRA:**
ATERRA EXPLORATION, LLC
By: ______________________
David Sepiashvili, President

Date: 12/03/15

**КОМПАНИЯ АТЕРРА**
АТЕРРА ЭКСПЛОРЕЙШН, ЛЛС
______________________
Давид Сепиашвили, Президент

Дата: 12/03/15

ATERRA EXPLORATION LLC CORPORATE SEAL 2003 DELAWARE

| APPENDIX A<br>LEASE PLAT<br><br>Lease is located in the Frio County, Texas | ПРИЛОЖЕНИЕ А<br>СХЕМА УЧАСТКА<br><br>Участок расположен в округе Фрио, Техас. |
|---|---|




Дюжик

DS

ATERRA EXPLORATION
Leona River
ALEXANDER PENN JARVIS A-435
JUAN CASANOBA
L.I.M. & C.CO.
-808
-810
-809

| APPENDIX B<br>FORM OF REPORT | ПРИЛОЖЕНИЕ Б<br>ФОРМА ОТЧЕТА |
|---|---|
| At Creditors request, Aterra will supply work progress reports on geological, geophysical, petrophysical, engineering and marketing work. | По запросу Кредитора, Атерра представит прогресс-репорты по всей проводимой геолого-геофизическо-петрофизической, инженерной, и маркетинговой работе. |

DS

# EXHIBIT B

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## ASSIGNMENT OF OIL AND GAS LEASE

STATE OF TEXAS

KNOW ALL MEN BY THESE PRESENTS

COUNTY OF FRIO

THAT IN CONSIDERATION OF THE SUM OF TEN DOLLARS ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, TIGHT ROCK, LLC, whose address is 8000 IH-10 West, Suite 600, San Antonio, Texas, 78230 (hereinafter referred to as "Assignor"), does hereby bargain, assign, transfer and convey unto ATERRA EXPLORATION, LLC, whose address is 10100 Reunion Place, Suite 625 San Antonio, Texas 78216 (hereinafter referred to as "Assignee"), subject to the terms, provisions and reservations set forth herein below, all of Assignor's right title and interest in and to that certain Oil, Gas and Mineral Lease ("Lease") described on Exhibit "A" attached hereto and made a part hereof for all purposes.

Assignee agrees to abide by all terms and conditions set forth in the Lease assigned herein. Assignee shall have the right to exercise its right to pool acreage covered under the Lease, as allowed under the terms of the Lease, and may pool the interest hereby assigned by Assignor. This Assignment is made without warranty of title and Assignee, its successors and assigns, agree to protect, indemnify and hold Assignor free and harmless from and against any and all claims, liens, demands and causes of action of every kind and character. The terms, covenants, and conditions hereof shall be covenants running with the Lease and shall extend to and be binding upon and inure to the benefit of the parties hereto, their heirs, administrators, executors, personal representatives, successors and assigns.

IN WITNESS WHEREOF, this instrument is executed as of the date set forth in the acknowledgment below, but effective as of December 17, 2015.

ASSIGNOR:

TIGHT ROCK, LLC

By: ______________________________
Debbie Adokpaye, Agent / Landman

**ACKNOWLEDGEMENTS**

STATE OF Texas §
§
COUNTY OF Bexar §

BEFORE ME, the undersigned authority, on this day personally appeared Debbie Adokpaye, known to me to be the person whose name is subscribed to the foregoing instrument, as Agent/Landman of Tight Rock, LLC, a Texas Limited Liability Company, and acknowledged to me that she executed the same for the purposes and consideration therein expressed, in the capacity stated, and as the act and deed of said company.

Given under my hand and seal of office this 17th day of December, 2015.

Kathy Stout
Notary Public in and for the State of ________
My Commission Expires: ________

KATHY STOUT
Notary Public
STATE OF TEXAS
My Comm. Exp. July 28, 2018

**EXHIBIT A**

**THE LEASES AND LANDS SUBJECT TO PURCHASE AND SALE**

1. **MARION LEASE**:

LESSOR: NANCY K. MARION

LESSEE: TIGHT ROCK, LLC

DATE & RECORDING: October 21, 2015; Volume 192, pages 771-774

DESCRIPTION OF LANDS COVERED:

Acreage out of the D.D. Harrigan's Third Subdivision, known as the Leona Valley Farms out of the Sackville Ranch, according to the plat of said Subdivision of record in Volume 72, page 522, Deed Records of Frio County, Texas, to wit:

(a) Tracts No. 25 and 26, 80 acres each, out of the John Chaffin Survey No. 317, A-162; and

(b) Tract No. 27, 80 acres, out of the John Chaffin Survey 317, A-162 and L.I.M. & C. Survey 9, A-480; and

(c) Tracts No. 28 and 29, 81.9 acres each, out of the L.I.M. & C. Survey 9, A-480; and

(d) Tracts No. 30 and 38, 81.9 acres and 143.9 acres respectively, out of the L.I.M. & C. Survey 9, A-480; and

(e) Tract No. 31, 78.7 acres, and Tracts No. 32, 36 and 37 of 70.6 acres each, out of the John Chaffin Survey 317, A-162, L.I.M. & C. Survey 9, A-480 and Jas. Hayr Survey 318, A-356; and

(f) Tract No. 39, 143.2 acres and the South Half of Tract No. 40, 81.43 acres, out of the Jas. Hayr Survey 318, A-356 and Jas. Hayr Survey 338, A-381; and

being the same property described in Warranty Deed dated August 19, 1944 from Sterling N. Dobie, et ux to Milburn Brake, recorded in Volume 118, page 633 of the Deed Records of Frio County, Texas.

# EXHIBIT C

**RAILROAD COMMISSION OF TEXAS**
**HEARINGS DIVISION**

**OIL AND GAS DOCKET NO. 01-0302200**

---

**ENFORCEMENT ACTION AGAINST ATERRA EXPLORATION, LLC (OPERATOR NO. 036043) FOR VIOLATIONS OF STATEWIDE RULES ON THE WHITWORTH (GAS ID. NO. 273598) LEASE, WELL NO. 1H, WILDCAT FIELD, MAVERICK COUNTY, AND WHITWORTH (17553) LEASE, WELL NO. 2, WILDCAT FIELD, MAVERICK COUNTY, TEXAS**

---

## FINAL ORDER

The Railroad Commission of Texas ("Commission") finds that after statutory notice the captioned enforcement proceeding was heard by a Commission Administrative Law Judge on March 9, 2017 and that the respondent, Aterra Exploration, LLC, failed to appear or respond to the Notice of Opportunity for Hearing. Pursuant to § 1.49 of the Commission's General Rules of Practice and Procedure, 16 TEX. ADMIN. CODE § 1.49, and after being duly submitted to the Commission at a conference held in its offices in Austin, Texas, the Commission makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Aterra Exploration, LLC ("Respondent"), Operator No. 036043, was sent the Original Complaint and Notice of Opportunity for Hearing by certified and first class mail, addressed to the most recent Commission Form P-5 (Organization Report) ("Form P-5") address; Aterra Exploration, LLC, 10100 Reunion Place, Ste 625, San Antonio, Texas, 78612. Respondent's officer and resident Texas agent as identified on the Form P-5—David Sepiashvili, Managing Member and James H. Fallon, Resident Texas Agent—were each sent the Original Complaint and Notice of Opportunity for Hearing by certified and first class mail, addressed to their last known address: David Sepiashvili, Managing Member, 230 West 56th Street, Apt. 53D, New York, New York, 10019 and James H. Fallon, Registered Texas Agent, Aterra Exploration, LLC, 28709 IH 10 West, Boerne, Texas, 78006.

2. The certified mail envelope containing the Original Complaint and Notice of Opportunity for Hearing addressed to the Respondent was returned to the Commission unopened on January 20, 2017. The certified mail envelopes addressed to David Sepiashvili and James H. Fallon were delivered on December 12, 2016 and December 19, 2016, respectively. The first-class mail was not returned. Record of the delivery [or/and return of] of certified mail has been on file with the Commission for more than 15 days, exclusive of the day of receipt and

day of issuance. Respondent was given more than 30 days' notice of the Original Complaint and Notice of Opportunity for Hearing. Respondent has not entered into an agreed settlement order, filed an answer, or requested a hearing.

3. Respondent filed its first Form P-5 with the Commission in 2012. On August 18, 2014, Respondent, a Limited Liability Company, filed a Form P-5 with the Commission reporting that its officers consist of the following individual: David Sepiashvili.

4. David Sepiashvili was in a position of ownership or control of Respondent, as defined in section 91.114 of the Texas Natural Resources Code, during the time period of the violations of Commission rules committed by Respondent.

5. Respondent's Form P-5 is delinquent. Respondent had a $25,000 cash deposit as its financial assurance at the time of Respondent's last Form P-5 annual renewal submission.

6. The violations of Commission rules committed by Respondent are related to safety and the control of pollution.

7. Respondent designated itself to the Commission as the operator of the Whitworth (Gas ID. No. 273598) Lease, Well No. 1H, by filing a Commission Form P-4 (Certificate of Compliance and Transportation Authority), effective February 16, 2013, approved September 23, 2014.

8. Respondent designated itself to the Commission as the operator of the Whitworth Lease (17553), Well No. 2, by filing a Commission Form P-4 (Certificate of Compliance and Transportation Authority), effective August 12, 2013, approved May 28, 2014.

9. Commission inspection reports made on March 7, 2016, May 16, 2016, June 21, 2016, and June 22, 2016, for the Whitworth (Gas ID. No. 273598) Lease, show that the sign or identification required by Statewide Rule 3(1) to be posted at the lease entrance was missing.

10. Commission inspection reports made on March 7, 2016, May 16, 2016, June 21, 2016, and June 22, 2016, for the Whitworth (Gas ID. No. 273598) Lease, show that the sign or identification required by Statewide Rule 3(2) to be posted at the well was missing.

11. Commission inspection reports made on April 7, 2015, March 4, 2016, May 16, 2016, June 21, 2016, and June 22, 2016, for the Whitworth Lease (17553), show that the sign or identification required by Statewide Rule 3(1) to be posted at the

lease entrance was missing.

12. Commission inspection reports made on April 7, 2015, March 4, 2016, May 16, 2016, June 21, 2016, and June 22, 2016, for the Whitworth Lease (17553), show that the sign or identification required by Statewide Rule 3(1) to be posted at the well was missing.

13. The lack of legible signs and identification displaying correct information, as set forth in Statewide Rules 3(1) and 3(2), may cause confusion as to the responsible operator to be contacted and the actual location of the violation or emergency, which can result in delays in remedying a violation or emergency.

14. The violations of Commission rules committed by Respondent are related to safety and the control of pollution. According to an Affidavit signed by Petar Buva, Field Operations, on Statewide Rule 3, "In the event of a pollution or safety violation or other emergency, the lack of legible signs and identification displaying correct information may cause confusion as to the responsible operator to be contacted and the actual location of the violation or emergency. Such confusion will cause delays in containing and remediating the violation or emergency, which is serious and may threaten the public health and safety."

15. Commission District inspection reports made on March 4, 2016, March 7, 2016, May 16, 2016, June 21, 2016, June 22, 2016, and reports filed by Respondent with the Commission (reflecting zero production) since February 2013, showed that the Whitworth (Gas ID. No. 273598) Lease, Well No. 1H has been inactive for a period greater than one year. Commission records show that no production has been reported on the well since it was completed on February 16, 2013.

16. Commission District inspection reports made on April 7, 2015, March 4, 2016, May 16, 2016, June 21, 2016, June 22, 2016, and reports filed by Respondent with the Commission (reflecting zero production) since August 2013, showed that the Whitworth Lease (17553), Well No. 2 has been inactive for a period greater than one year. Commission records show that no production has been reported on the well since it was completed on August 12, 2013.

17. No work-overs, re-entries, or subsequent operations have taken place on any of the subject wells within the last twelve months; none of the subject wells have been properly plugged in accordance with Statewide Rule 14, 16 TEX. ADMIN. CODE § 3.14; and no plugging extensions are in effect for any of the subject wells as allowed by Statewide Rule 14. The subject wells are not otherwise in compliance with Statewide Rule 14.

18. Usable quality groundwater in the area can become contaminated by migrations or discharges of saltwater and other oil and gas wastes from the subject wells. Unplugged wellbores, in violation of Statewide Rule 14(b)(2), constitute a cognizable threat to the public health and safety because of the potential of pollution.

19. The violations of Commission rules committed by Respondent are related to safety and the control of pollution. According to a February 2, 2017 affidavit signed by Petar Buva, Field Operations, "Any wellbore, cased or otherwise, is a potential conduit for flow from oil or saltwater zones to zones of usable quality water or to the surface. Holes or leaks may develop in cased wells, allowing oil or saltwater to communicate with usable quality zones or to flow to the surface. Uncased wells allow direct communication between zones and provide unimpeded access to the surface."

20. The total estimated cost to the State for plugging the Whitworth (Gas ID. No. 273598) Lease, Well No. 1H is $40,689.00 and for the Whitworth Lease (17553), Well No. 2 is $25,414.00.

21. A Commission District inspection report made on June 22, 2016 for the Whitworth (Gas ID. No. 273598) Lease indicated there is an open cellar which contains water and oil waste. The cellar is approximately 8 feet in diameter and is still in non-compliance.

22. Respondent did not have a permit for said discharges, nor were they authorized under Statewide Rules 8(d)(3), 8(e), 9, 46 or 98.

23. Unpermitted discharges of oil and gas waste, in violation of Statewide Rule 8(d)(1), can contaminate the land surface, affect the health of humans and animals, and may eventually be discharged to surface or subsurface waters, causing pollution.

24. The violations of Commission rules committed by Respondent are related to safety and the control of pollution. According to an Affidavit signed by David Randle, Field Operations, on Statewide Rule 8(d)(1), "Any unauthorized discharge of disposal of oil, saltwater, basic sediment or other oil and gas waste is a potential source of pollution to surface and subsurface waters if not remediated to prevent seepage and run-off."

25. Respondent has no prior history of violations of Commission rules.

## CONCLUSIONS OF LAW

1. Proper notice was issued by the Commission to Respondent and all other appropriate persons legally entitled to notice.

2. All things necessary to the Commission attaining jurisdiction over the subject matter and the parties have been performed or have occurred.

3. Respondent is responsible for maintaining the subject lease in compliance with all applicable Commission rules and chapters 89 and 91 of the Texas Natural Resources Code.

4. Respondent is in violation of Statewide Rules 3(1), 3(2), 14(b)(2), and 8(d)(1). 16 TEX. ADMIN. CODE §§ 3.3(1), 3.3(2), 3.14(b)(2), and 3.8(d)(1).

5. The documented violations committed by Respondent constitute acts deemed serious, and a hazard to the public health, and demonstrate a lack of good faith pursuant to TEX. NAT. RES. CODE § 81.0531(c).

6. Respondent is responsible for maintaining the subject leases in compliance with Statewide Rule 3(1) which requires that for each property that produces oil, gas or geothermal resources and each oil, gas or geothermal resource well and tank, or other approved crude oil measuring facility, a sign shall be posted at the principal entrance which shall show the name by which the property is carried on the records of the Commission, the name of the operator, and the number of acres in the property.

7. Respondent is responsible for maintaining the subject lease in compliance with Statewide Rule 3(2), which requires that each well site that produces oil, gas, or geothermal resources shall post signs or identification showing the name of the property, name of the operator and the well number.

8. Respondent is responsible for maintaining the subject lease in compliance with Statewide Rule 14(b)(2), which requires that plugging operations on each dry or inactive well shall be commenced within a period of one year after drilling or operations cease and shall proceed with due diligence until completed, unless the operator is eligible for and obtains an extension of the plugging deadline.

9. Respondent is responsible for maintaining the subject lease in compliance with Statewide Rule 8(d)(1), which prohibits the discharge of oil and gas waste without a permit.

10. Pursuant to TEX. NAT. RES. CODE § 81.0531, the Commission may assess

administrative penalties against Respondent for the subject violations of up to $10,000 per day for each violation, with each day such violations continued constituting a separate violation.

11. An assessed administrative penalty in the amount of **SEVENTEEN THOUSAND, ONE HUNDRED SEVENTY-FIVE DOLLARS ($17,175.00)** is justified considering the facts and violations at issue, consisting of two violations of Statewide Rule 3(1) at $1,000.00 each for a total of $2,000.00; two violations of Statewide Rule 3(2) at $500 each for a total of $1,000.00; two violations of Statewide Rule 14(b)(2) at $2,000.00 each, plus $1 per foot of well depth at a total well depth of 9,650 feet for a total of $13,650.00; and one violation of Statewide Rule 8(d)(1) at $500.00, plus $0.50 per square foot for 50 square feet for a total of $525.00.

12. As a person in a position of ownership or control of Respondent at the time Respondent violated Commission rules related to safety and the control of pollution, David Sepiashvili, and any other organization in which he may hold a position of ownership or control, are subject to the restriction in section 91.114(a)(2) of the Texas Natural Resources Code.

**IT IS ORDERED THAT** within 30 days from the day immediately following the date this order becomes final:

1. Aterra Exploration, LLC (Operator No. 036043) shall place the Whitworth (Gas ID. No. 273598) Lease, Well No. 1H, Wildcat Field, Maverick County; and Whitworth Lease (17553), Well No. 2, Wildcat Field, Maverick County, Texas in compliance with Statewide Rules 3(1), 3(2), 14(b)(2), and 8(d)(1), and any other applicable Commission rules and statutes.

2. Aterra Exploration, LLC (Operator No. 036043) shall pay to the Railroad Commission of Texas, for disposition as provided by law, an administrative penalty in the amount of **SEVENTEEN THOUSAND, ONE HUNDRED SEVENTY-FIVE DOLLARS ($17,175.00)**.

It is further **ORDERED** that as a person in a position of ownership or control of Respondent at the time Respondent violated Commission rules related to safety and the control of pollution, David Sepiashvili and any other organization in which he may hold a position of ownership or control, shall be subject to the restriction in section 91.114(a)(2) of the Texas Natural Resources Code for a period of no more than seven years from the date the order entered in this matter becomes final, or until the conditions that constituted the violations herein are corrected or are being corrected in accordance with a schedule to which the Commission and the organization have agreed, and all administrative, civil, and criminal penalties and all cleanup and plugging costs incurred by the State relating

to those conditions are paid or are being paid in accordance with a schedule to which the Commission and the organization have agreed.

It is further **ORDERED** by the Commission that this order shall not be final and effective until 25 days after the Commission's order is signed, unless the time for filing a motion for rehearing has been extended under TEX. GOV'T CODE § 2001.142, by agreement under TEX. GOV'T CODE § 2001.147, or by written Commission Order issued pursuant to TEX. GOV'T CODE § 2001.146(e). If a timely motion for rehearing is filed by any party at interest, this order shall not become final and effective until such motion is overruled, or if such motion is granted, this order shall be subject to further action by the Commission. Pursuant to TEX. GOV'T CODE § 2001.146(e), the time allotted for Commission action on a motion for rehearing in this case prior to its being overruled by operation of law is hereby extended until 90 days from the date the parties are notified of this order in accordance with TEX. GOV'T CODE § 2001.144.

All requested findings of fact and conclusions of law, which are not expressly adopted herein, are denied. All pending motions and requests for relief not previously granted or granted herein are denied.

Noncompliance with the provisions of this order is subject to enforcement by the Attorney General and subject to civil penalties of up to $10,000.00 per day per violation.

Done this 4th day of April, 2017

**RAILROAD COMMISSION OF TEXAS**

(Signatures affixed by Default Master Order dated April 4, 2017)

MFE/dac/rnf

# EXHIBIT D



SOUTHTEX
ENERGY
CORPORATION

# Austin Chalk Development Project

TERM SHEET
prepared for
NIKOLAI RASTORGUEV

**LEGAL ENTITY:**

1. New company **SouthTex Energy Corporation** ("SouthTex") has been formed on April 5, 2016 to be governed by Texas Close Corporation Organizational Code. Texas File Number is 0802429970. Internal Revenue Service (IRS) Taxpayer Identification Number is 81-2059189.

2. **Registered address** for the company is:
   SouthTex Energy Corporation
   10100 Reunion Place, Suite 625
   San Antonio, Texas 78216
   United States

3. **Bank account** has been opened:
   Wallis State Bank of Texas
   10100 Reunion Place, Suite 125
   San Antonio, Texas 78216
   United States

   Account Number 0979716

   Wire Instructions:
   Beneficiary Bank Name:
   TIB, Irving Texas
   Beneficiary Bank SWIFT:
   TIBBUS44

# Проект разработки месторождения Астин Чок

ОСНОВНЫЕ УСЛОВИЯ СДЕЛКИ
подготовлено для
НИКОЛАЯ РАСТОРГУЕВА

**ИНФОРМАЦИЯ О КОМПАНИИ:**

1. Новая компания **«СауфТекс Энерджи Корпорэйшн»** («СауфТекс»), учрежденна 5 апреля 2016 года в соответствии с законом штата Техас об учреждении закрытых акционерных корпорациях. Регистрационный номер компании, зарегистрированной в штате Техас - 0802429970. Индивидуальный номер налогоплательщика, предоставляемый Службой внутренних доходов США («IRS») - 81-2059189.

2. **Юридический адрес** компании:
   СауфТекс Энерджи Корпорэйшн
   10100 Реюнион Плэйс, Здание 625
   Сан-Антонио, штат Техас 78216
   Соединенные Штаты Америки

3. **Счет в банке:**
   Уоллис Стэйт Бэнк оф Тексас
   10100 Реюнион Плэйс, Здание 125
   Сан-Антонио, штат Техас 78216
   Соединенные штаты Америки

   Номер счета: 0979716

   Реквизиты для денежного перевода:
   Банка бенефициар:
   TIB, Irving Texas
   SWIFT банка бенефициара:
   TIBBUS44

DS

For Further Benefit of:
Wallis State Bank, BBK Routing # 113113391
Beneficiary Name:
SouthTex Energy Corporation
Account Number:
0979716

В пользу:
Уоллис Стэйт Бэнк, Код банка получателя # 113113391
Наименование получателя:
СауфТекс Энерджи Корпорэйшн
Номер счета:
0979716

4. SouthTex has been authorized to issue single type common shares (subject to the agreement between the shareholders SouthTex will be able to issue shares of different types and classes). To date, no shares have been issued. Before and until final ByLaws are agreed to and finalized, all shares shall be assigned to Nikolai Rastorguev ("NR") and Aterra Exploration, LLC ("Aterra"). Bylaws shall be finalized and shares re-assigned by September 1, 2016.

4. СауфТекс вправе осуществить выпуск одной категории акций - обыкновенных акций (с учетом договоренностей между акционерами компания СауфТекс будет иметь возможность выпускать акции разных типов и классов). В настоящее время, выпуск акций не был осуществлен. Все акции будут распределены в пользу Николая Расторгуева («НР») и компании Aterra Exploration, LLC («Атерра») до заключительного согласования и утверждения Устава. Утверждение устава и перераспределение акций будут осуществлены в срок до 1 Октября 2016 года.

5. NR, so as any shareholder of SouthTex, will have full access to any financial activity of the company.

5. У НР, как у любого другого акционера компании СауфТекс, будет полный доступ ко всей финансовой деятельности компании СауфТекс .

**PROJECT:**

**РЕАЛИЗАЦИЯ ПРОЕКТА:**

1. SouthTex will be engaged in the acquisition of existing vertical and horizontal wellbores targeting the Austin Chalk formation for re stimulation and/or re-entry and re-completion using modern water flushes and/or multi-stage hydraulic fracturing. Steps of the project are:

   a. **Identification:** Based on Aterra's preliminary work, which includes geological, geophysical, petrophysical, engineering, and land work, potential re-rentry candidates targeting the Austin Chalk formation have been identified, and such work

1. СауфТекс будет заниматься вопросами приобретения существующих вертикальных и горизонтальных скважин под целевой горизонт Остин Чок, с целью повторной стимуляции притока в скважине и/или повторного входа в скважину, с использованием современных механизмов бурения с промывкой водой и/или многоступенчатого гидравлического разрыва пласта. Этапы реализации проекта:

   a. **Идентификация**: На основе результатов подготовительной работы компании Атерра, которая включала в себя: геологические, геофизические, петрофизические, инжиниринговые и наземные

is an ongoing process;

работы, были идентифицированы потенциальные скважины для приобретения, с целью повторного входа. Данные работы осуществляются на постоянной основе;

b. **Acquisition:** Acquisition of the prospects shall commence upon receipt of funds. It is estimated that it will take 3-6 weeks to acquire individual prospects. Acquisition of prospects can proceed on an ongoing basis, based on amount of funding available;

б. **Приобретение:** Приобретение объектов будет осуществлено после получения финансирования. Приобретение конкретного объекта займет по времени, приблизительно, от 3 до 6 недель. Приобретение объектов может осуществляться на постоянной основе, в зависимости от объема финансирования;

c. **Waterflush:** Once the prospective wellbore is acquired, Aterra will prepare to commence waterflush stimulation within +/- 30-45 days with work estimate costs and a plan for water flush job ;

в. **Промывка водой:** После приобретения потенциальной скважины, компания Атерра начнет подготовительные работы в срок, приблизительно, от 30 до 45 дней по осуществлению стимуляции притока в скважине посредством промывки ее водой и предоставление плана со сметой таких работ;

d. **Fracking:** Upon and when agreed to by shareholders of the company, the next stage of the project shall be multistage fracking stimulation of the existing horizontal wellbore, or re-entry of the existing wellbore and drilling and stimulation of a new horizontal lateral. Once this election is made, the operations shall commence within +/- 30-45 days.

г. **Гидравлический разрыв пласта:** По решению акционеров компании, следующим этапом реализации проекта будет многоступенчатый гидравлический разрыв пласта существующей горизонтальной скважины, или повторный вход в существующую скважину, бурение и стимуляция притока в новой горизонтальной скважине. После принятия такого решения акционерами, данные работы будут осуществлены в срок, приблизительно, от 30 до 45 дней с предоставленным планом и сметой таких работ

e. **Sale:** Should shareholders jointly

д. **Продажа:** Если акционеры

DS

decide to sell the assets, such sale may occur at any stage of the project with or without the use of investment bankers.

примут совместное решение о продаже активов, такая продажа осуществиться на любом этапе реализации проекта с или без привлечения к данной продаже инвестиционных банкиров.

**FUNDING:**

1. NR agrees to initially contribute $1,000,000 (one million USD) into SouthTex to the account specified above in exchange of initial 500 shares of SouthTex.

2. Aterra agrees to contribute well (or wells) with water flush with equivalent value of $1,000,000 (one million USD) into SouthTex. In the event Aterra did not contribute well (or wells) with water flush with equivalent value of $1,000,000 (one million USD) into SouthTex, then Aterra agrees to contribute $1,000,000 (one million USD) to the account specified above in exchange of initial 500 shares of SouthTex. Such contribution Aterra shall make no later than within 3 (three) month after signing of this Term Sheet.

3. Funds transferred by the NR in the total amount of $1,000,000 (one million USD) will be immediately used ***strictly*** to acquire Austin Chalk reentry candidate wells with HBP units (with the possibility to receive not less than 75% Net Revenue Interest and considering the remainder of interest as royalty interest), and for water flush operations only.

**ФИНАНСИРОВАНИЕ:**

1. НР выражает согласие вложить на текущий момент $1,000,000 (один миллион долларов США) в компанию СауфТекс на счет, указанный выше, в обмен на 500 первоначально выпускаемых акций компании СауфТекс.

2. Атерра выражает согласие вложить скважину (или скважины) с проведенной промывкой водой на справедливую сумму равную 1 000 000 $ (один миллион долларов США). Если Атерра не вносит скважину (или скважины) с проведенной промывкой водой на справедливую сумму равную 1 000 000 $ (один миллион долларов США), то Атерра вносит 1 000 000 $ (один миллион долларов США) в компанию Сауф Текс на счет, указанный выше, в обмен на 500 первоначально выпускаемых акций компании Сауф Текс

3. Денежные средства со стороны НР, составляющие в сумме $1,000,000 (один миллион долларов США), будут незамедлительно использованы ***исключительно*** для приобретения на территории Остин Чока потенциальных скважин с "HBP units" (с возможностью получения 75% чистого дохода с прибыли с учётом выплат остальной части интререса как роялти) и только для осуществления стимуляции притока в скважине посредством промывки ее водой.

DS

4. SouthTex shall start water flush work ***only*** after approval of such work estimate and work plan by SouthTex's shareholders.

4. СауфТекс приступит к выполнению работ по промывке водой только после утверждения сметы и плана таких работ акционерами компании СауфТекс.

**MANAGEMENT AND SUPERVISING SOUTHTEX ACTIVITY:**

1. Parties agree that Aterra will provide to SouthTex the following operational manager's functions including but not limited to

   a. recruitment of the contract operator for waterflush stimulation and fracking of all wells

   b. supervising of all contract operator's work, which includes but may not be limited to, waterflush and multistage frac stimulation operations

   c. supervising of contract operator's usage of the innovative drilling mechanisms of waterflush and multistage frac stimulation operations

   d. geological works

   e. Geophysical works

   f. petrophysical works

   g. engineering works

**УПРАВЛЕНИЕ И СОПРОВОЖДЕНИЕ ДЕЯТЕЛЬНОСТИ КОМПАНИИ САУФТЕКС:**

1. Стороны договорились, что компания Атерра выполняет функции операционного менеджера и оказывает компании СауфТекс, в частности, следующие услуги:

   а. подбор компании для проведения работ по "Промывке водой" и "Гидравлическому разрыву" пласта" на всех приобретенных скважинах

   б. контроль исполнения компанией, указанной выше, работ по "Промывке водой" и "Гидравлическому разрыву" пласта"

   в. контроль использования компанией, указанной выше, современных механизмов бурения с промывкой водой и/или многоступенчатого гидравлического разрыва пласта,

   г. геологические работы

   д. геофизические работы

   е. петрофизические работы

   ж. инжиниринговые работы



| | | | |
|---|---|---|---|
| h. | ongoing technical support for the acquired prospects | з. | постоянная техническая поддержка приобретенных объектов |
| i. | SouthTex's operational management (in particular, accounting, administration, communication with regulatory authorities, book keeping and etc.) | и. | операционное управление компанией СауфТекс (в частности, подготовка отчетности, администрирование компании, взаимодействие с государственными органами, ведение документооборота и пр.) |
| j. | technical support and provision of information to any third party, hired or retained, for a sale of SouthTex's assets | к. | техническая поддержка и предоставление информации любой третьей стороне, осуществляющей деятельность на основании договора найма или договора оказания услуг, с целью продажи активов СауфТекс |
| k. | management of the contract-operator who will be responsible for sales of hydrocarbons and reporting of all sales and transactions to the shareholders of SouthTex | л. | организация и контроль за компанией-оператором которая будет осуществлять продажу углеводородов с предоставлением обязательных отчётов на постоянной основе в адрес акционеров компании СауфТекс |
| l. | management of the contract-operator who will be responsible for all royalty payments, production tax withholdings and other regulatory filings and compliances. | м. | организация и контроль за компанией-оператором которая будет осуществлять оплату роялти, налогов на добычу полезных ископаемых, и предоставлять отчётность в контролируемые органы. |
| m. | other services | н. | иные услуги |

2. Parties agreed that for all previous work, as well as future work and services by Aterra described in this TermSheet, Aterra shall receive compensation equal to $500,000 (five hundred thousand USD)

2. Стороны договорились, что за проведённую прошедшую работу, а также оказание вышеуказанных услуг, компенсация компании Атерра составит [$500,000 (пятьсот тысяч долларов США)]

3. Parties agree that SouthTex will pay Aterra's services fee specified above ***only*** upon occurrence of ***one*** of the following events, namely:

3. Стороны договорились, что компания SouthTex оплатит вышеуказанную стоимость услуг компании Атерра ***только*** при возникновения ***одного*** из следующих событий, а именно:



a. Fracking of all wells is completed, wellbores received significant additional reserves, sale of which resulted in receipt by SouthTex of the amount not less than $2,500,000 (two million five hundred thousand USD) on its bank account.

а. Осуществление работ по "Гидравлическому разрыву" пласта" завершено и все скважины получили дополнительный существенный приток, реализация которого позволила компании СауфТекс получить на свой банковский счет прибыль в размере не менее $2,500,000 (двух миллионов пятисот тысяч долларов США).

b. After the completion of waterflush stimulation and (or) fracking of all wells NR and Aterra took a unanimous decision on disposal (including by means of issuance of additional shares) of a part of SouthTex shares in favour of additional third-party investor(-s).

б. После завершения работ по "Промывке водой" и (или) "Гидравлическому разрыву" пласта" НР и компанией Атерра принято совместное решение об отчуждении (включая выпуск дополнительных акций) части акций компании СауфТекс в пользу дополнительного стороннего инвестора или круга инвесторов.

4. Upon occurrence of the event specified in paragraphs 3 (a) or 3 (b) above, NR and Aterra shall take a unanimous decision on the payment of fee in the amount of $500,000 (five hundred thousand USD) for operational management services provided by Aterra as well as on the effectiveness of further usage of Aterra's operational management services and amount of fee that should be paid for such services in the future.

4. По наступлении событий, указанных в пунктах 3 (а) или 3 (б) выше, НР и компания Атерра примут совместное решение об оплате услуг компании Aterra по операционному менеджменту в размере $500,000 (пятисот тысяч долларов США), а также относительно целесообразности дальнейшего использования услуг компании Атерра по операционному менеджменту и размера оплаты данных будущих услуг.

5. Subject to the unanimous decision of SouthTex shareholders Aterra will be in a position to reinvest all or part of fee for operational management services, specified above, for the purposes of development of SouthTex business on terms and conditions that will be agreed between SouthTex shareholders.

5. По совместному решению акционеров компании СауфТекс компания Aterra может реинвестировать всю или часть суммы вознаграждения, указанного выше, в развитие бизнеса компании СауфТекс на условиях, которые будут согласованы между акционерами компании СауфТекс.

6. SouthTex will initially be managed by Aterra, however SouthTex may elect to maintain its own in-house management at such time when it has enough cash flows to do so or upon a second round of funding.

6. Компания Атерра изначально осуществляет управление СауфТекс, при этом, СауфТекс может принять решение об оставлении за собой управления при условии, что она обладает достаточным

DS

капиталом для осуществления такого управления или принять данное решение после повторного финансирования проекта.

Date: 07/11/2016

Дата: 07/11/2016

SouthTex Energy Corporation
By: David Sepiashvili, Director

СауфТекс Энерджи Копорэйшн
Подпись: Давид Сепиашвили, Директор

Aterra, Exploration, LLC
By: David Sepiashvili, Manager

Атерра, Эксплорейшн, ЛЛС
Подпись: Давид Сепиашвили, Руководитель

Nikolai Rastorguev

Николай Расторгуев

# EXHIBIT E

**WALLIS STATE BANK** Account Statement
Member FDIC

PAGE: 1
ACCOUNT: 979716 07/29/2016
DOCUMENTS: 0

>00559 6618393 002 092047 10Z

SOUTHTEX ENERGY CORPORATION
DAVID G SEPIACHVILI
DAVID A SEPIASHVILI 30
10100 REUNION PLACE STE 625 0
SAN ANTONIO TX 78216-4159 0

PRIVACY NOTICE-Federal law requires us to tell you how we collect, share, and protect your personal information. Our privacy policy has not changed and you may review our policy and practices with respect to your personal information at www.wallisbank.com or we will mail you a free copy upon request if you call us at (713)580-9900.

SMALL BUSINESS CHECKING ACCOUNT 979716

| | |
|---|---|
| LAST STATEMENT 06/30/16 | 166.29 |
| 1 CREDITS | 800,000.00 |
| 3 DEBITS | 800,020.00 |
| THIS STATEMENT 07/29/16 | 146.29 |

OTHER CREDITS

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| INC TIB INTL WT ORG. NIKOLAY RASTORGUEV | 07/22 | 800,000.00 |

OTHER DEBITS

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| INC TIB INTL WT FEE ORG. NIKOLAY RASTORGUEV | 07/22 | 10.00 |
| E-Corp Outgoing Wire Fee 51570 | 07/28 | 10.00 |
| Outgoing Wire 51570 | 07/28 | 800,000.00 |

I N T E R E S T

| | | | |
|---|---|---|---|
| AVERAGE LEDGER BALANCE: | .00 | INTEREST EARNED: | .00 |
| INTEREST PAID THIS PERIOD: | .00 | DAYS IN PERIOD: | |
| | | ANNUAL PERCENTAGE YIELD EARNED: | .00% |

* * * C O N T I N U E D * * *

00559 6618393 000865 001766 00001/00002

Z0050555

PAGE: 2
ACCOUNT: 979716 07/29/2016
DOCUMENTS: 0

SOUTHTEX ENERGY CORPORATION

SMALL BUSINESS CHECKING ACCOUNT 979716

- - - ITEMIZATION OF OVERDRAFT AND RETURNED ITEM FEES - - -

| | TOTAL FOR THIS PERIOD | TOTAL YEAR TO DATE |
|---|---|---|
| TOTAL OVERDRAFT FEES: | $.00 | $.00 |
| TOTAL RETURNED ITEM FEES: | $.00 | $.00 |

- - - - - - - - DAILY BALANCE - - - - - - - -

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|
| 07/22 | 800,156.29 | 07/28 | 146.29 | | |

00559 6618393 000886 001768 0002/0002

Approved. Confirmation Number: 112432840 Wire Number: 51570
Template:
Tight Rock Company
Amount:
800,000.00
Date:
07/28/2016
Done Print