UNITED STATED DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| NIKOLAY RASTORGUEV, § | |
| § | |
| Plaintiff § | |
| § | |
| v. § | |
| § | |
| DAVID SEPIACHVILI, § | CIVIL ACTION NO. 5:18-CV-00966 |
| DAVID A. SEPIASHVILI, § | |
| ATERRA EXPLORATION, LLC, § | |
| SOUTHTEX ENERGY CORP., § | |
| LEVEL ONE ADVISORS, INC., and § | |
| TIGHT ROCK COMPANY, LLC, § | |
| § | |
| Defendants § | |

**DEFENDANTS' MOTION TO DISMISS COMPLAINT
FOR LACK OF SUBJECT MATTER JURISDICTION,
ANSWER SUBJECT THERETO AND COUNTERCLAIM**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Now come David Sepiachvili, David A. Sepiashvili, Aterra Exploration, LLC, SouthTexas Energy Corp., Level One Advisors, Inc., and Tight Rock Company, LLC, Defendants in the above entitled and numbered cause, and make and file their Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction, Answer subject thereto and Counterclaim.

**Motion to Dismiss**

1.     Defendants move to dismiss the complaint on the ground that this Court lacks subject matter jurisdiction.  This motion is filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

1

2. Plaintiff asserts jurisdiction in this Court of this cause pursuant to 28 USC § 1331, and specifically pursuant to the Exchange Act (15 USC § 27), as the sole basis for federal jurisdiction in this case.

3. The Exchange Act applies only to causes of action arising from the sale, offer to sell, purchase or offer to purchase, of securities.

4. Defendants aver that Plaintiff's allege causes of action for breach of contract, fraud and other state law claims which do not arise under the laws of the United States.  The transactions between Plaintiff and Defendants do not arise from any transactions in securities, as defined in the Exchange Act, and there is, therefore, no basis of jurisdiction of the subject matter of this case in this Court, and the cause should be dismissed.

## Answer

5. Defendants answer the allegations of the Complaint in the order of the numbered paragraphs contained therein:

1. Admitted.
2. David Sepiachvili is an individual.  Otherwise, denied.
3. Admitted that David A. Sepiashvili is an individual.  Otherwise, denied.
4. Admitted.  Aterra's corporate charter in in process of reinstatement.
5. Defendants (excluding SouthTex) lack sufficient information to admit or deny these allegations because Plaintiff has been in control of SouthTexas since July 31, 2017.
6. Admitted.
7. Admitted.
8. Defendants deny that this is a federal securities fraud claim.  Therefore, the Court lacks supplemental jurisdiction of Plaintiff's state law claims.
9. Denied.
10. Admitted as to Defendants' residence.  Defendants deny commission of a tort in whole or part in this district.
11. Denied.
12. Denied.
13. Denied.  Federal taxes have been paid in full.
14. Denied.

15. Denied.
16. Denied.
17. Denied.
18. Denied.
19. Denied.
20.-59. Denied. Admitted that Level One Advisors was managing partner of Tight Company. Otherwise denied.
60. Denied.
61. Execution of Application for Reinstatement is admitted; otherwise, denied.
62. Denied.
63. Admitted.
64. Admitted.
65. Admitted.
66. Denied.

## **Counterclaim**

6. Pleading now as Counter-Plaintiffs, David Sepiachvili and Aterra Exploration, LLC, complain of Nikolay Rastorguev, as Counter-Defendant, and for cause of action would show the following:

7. Counter-Plaintiff David Sepiachvili is a person who is substantially experienced in the identification and development of oil and gas exploration and production projects in the State of Texas and abroad.

8. In 2006, AstroTerra, LLC was formed in the State of Delaware, and in 2008 was renamed Aterra Exploration, LLC, Counter-Plaintiff.

9. Aterra Exploration, LLC ("Aterra") was owned 2/3rds by Adyl Khidirbekov ("Khidirbekov"), a citizen of the Russian Federation residing in Moscow. The remaining third of Aterra was owned by Counter-Plaintiff David Sepiachvili.

10. The business plan for Aterra was that David Sepiachvili would provide the knowledge, expertise and technical work necessary for the identification and development of oil and gas projects. Khidirbekov would provide capital and financing.

11. In 2010, Khidirbekov introduced Counter-Defendant Nikolay Rastorguev to Counter-Plaintiff David Sepiachvili. Rastorguev was represented by Khidirbekov to be an experienced, sophisticated and knowledgeable investor with high net worth interested in investing and raising capital for the operation and development of oil and gas projects to be developed by Aterra. At Khidirbekov's instructions, Counter-Plaintiff furnished detailed information to Rastorguev concerning Aterra and its plans for oil and gas projects.

12. The first oil and gas project undertaken between Rastorguev and Aterra was an unconventional shale exploration project in the Krasnodar Region of the Russian Federation, called the "KR Project." At Rastorguev's express request, Aterra spent substantial capital and labor in preparing an analysis for the KR Project, obtaining core sample data from oil and gas wells drilled in the region, and engaging and paying United States and Russian consulting geologist and other experts. Aterra prepared and provided to Rastorguev an extensive report for the KR Project.

13. Aterra undertook such expenditure and work upon the promise and agreement by Rastorguev that he would support the project with necessary capital to pay the expenses of Aterra's operations and to develop the project.

14. Counter-Defendant Rastorguev failed to raise the necessary capital and the KR Project did not proceed.

15. Near the end of 2014, Counter-Defendant Rastorguev solicited Aterra to identify another oil and gas project, again promising to raise capital for Aterra's expenses and the cost of development of the project. In 2014 and 2015, Aterra conducted an extensive study focusing on the Eagle Ford Formation in South Texas, and identified a prospect in Frio County, Texas, known as the Frio Project. Following an initial

contribution, Rastorguev failed to provide capital to acquire oil and gas leases in the project or otherwise cover expenses of its development.

16. Relying on Rastorguev's representations, Aterra continued spending its own capital and work on geologic and engineering studies to develop the Frio Project. Finally, Aterra notified Rastorguev that it could not continue to work on the Frio Project unless and until Rastorguev contributed additional capital.

17. The Frio Project was the subject of a Special Purpose Loan Agreement, drafted and proposed by Rastorguev, pursuant to which funds provided by Rastorguev were structured as a non-recourse loan to Aterra secured by the single oil and gas lease which had been acquired. The loan agreement provided that Aterra would manage the Frio Project and would have a 47% interest in the leases acquired in the Frio Project.

18. Because Rastorguev failed to provide the promised capital for additional development work and acquisition of oil and gas leases, the Frio Project could not go forward. At Rastorguev's demand, Aterra was induced to execute an Assignment and Assumption for Special Purpose Loan Agreement and Creditor Consent, pursuant to which it delivered all materials and data to Rastorguev concerning the Frio Project and relinquishing Aterra's 47% interest.

19. In 2016, Aterra began developing a project in the Austin Chalk Formation in South Texas called the "Austin Chalk Project." Aterra notified Rastorguev of the project, and he visited Texas to acquire additional information and to discuss his participation in it. Aterra advised Rastorguev concerning the capital which would be required for development of the project, and Rastorguev agreed to raise and contribute the capital necessary for Aterra's ongoing expenses and the development of the project.

20. Pursuant to their agreement, and based upon Rastorguev's representations, Aterra and Rastorguev jointly formed and founded SouthTex Energy Corporation and executed a term sheet for the parties' respective involvements.

21. Rastorguev contributed a total of $800,000 to SouthTex, which was used to acquire one producing Austin Chalk well known as the Ruisinger Well in a unit comprised of approximately 374 acres. Additional funds were necessary to qualify SouthTex as operator of the well, or to hire a third party operator, and for ongoing expenses necessary to take over and operate the Ruisinger Well and to further develop the project.

22. Rastorguev failed to provide additional capital, as he had agreed to do, resulting in Aterra's and SouthTex's inability to finally acquire and operate the Ruisinger Well or otherwise to further the project. Pursuant to demands made by Rastorguev, Aterra fully relinquished all of its ownership interest in SouthTex, and Counter-Plaintiff David Sepiachvili resigned as director.

23. The foregoing events occurred as part of, and in furtherance of, a plan and scheme by Counter-Defendant Rastorguev to induce Counter-Plaintiff to enter into agreements, spend substantial sums of money, and to do or cause to be done substantial amounts of work, including providing geological and technical expertise necessary to identify and develop oil and gas projects to a certain point, and then to acquire and take over the projects through a company called "Amshale," to the complete exclusion of Counter-Plaintiffs.

## First Cause of Action: Breach of Contract

24. Counter-Defendant and Counter-Plaintiffs entered into agreements whereby Counter-Plaintiffs would identify, develop and manage oil and gas projects, and

Counter-Defendant agreed to contribute the necessary capital to develop the projects for the parties' mutual benefit.

25. Counter-Plaintiffs performed these agreements, identifying prospects, acquiring oil and gas leases and wells, providing in depth studies, reports, and geological and technical data and analysis necessary to commence and partially complete the development of the projects.

26. Counter-Defendant breached the agreements by failing to provide necessary capital for the projects which he had agreed to provide.

27. Counter-Plaintiffs have suffered substantial damages, not less than $6,000,000, measured by money and the value of the work contributed by Counter-Plaintiffs in the furtherance of the projects, only to have the projects rendered without value to Counter-Plaintiffs by Counter-Defendant's failure to perform, as well as the loss of profits, interests in oil and gas properties, and other value which would have accrued to Counter-Plaintiffs but for Counter-Defendant's breaches, for which damages Counter-Plaintiffs now sue.

## Second Cause of Action:  Fraud

28. Counter-Defendant promised and represented that he would raise and contribute the funds and capital necessary to carry the oil and gas projects through.  His promise and representation was false.  He never intended to perform his agreement, but, instead, planned and schemed to see the projects developed to a certain point, then destroy their value by failing to support them, and finally to take over the projects to the exclusion of Counter-Plaintiffs.  Counter-Plaintiffs justifiably relied upon Counter-

Defendant's representations, resulting in damages as alleged above, for which Counter-Plaintiffs now sue.

### Attorney's Fees

29. It has been necessary for Counter-Plaintiffs to engage the undersigned firm of attorneys to prepare and prosecute their Counterclaim, and Counter-Plaintiffs are entitled to recover reasonable attorney's fees from Counter-Defendant, under and pursuant to Texas Civil Practice and Remedies Code § 38.001, et. seq.

### Conditions Precedent

30. All conditions precedent to the prosecution of this Counterclaim have been performed or have occurred.

PREMISES CONSIDERED, Defendants, David Sepiachvili, David A. Sepiashvili, Aterra Exploration, LLC, SouthTexas Energy Corp., Level One Advisors, Inc., and Tight Rock Company, LLC, and Counter-Plaintiffs, David Sepiachvili and Aterra Exploration, LLC, pray that upon final hearing, the Court render judgment:

(1) Dismissing Plaintiff's claims for want of subject matter jurisdiction; or

(2) That Plaintiff take nothing by his claims against Defendants;

(3) Awarding to Counter-Plaintiffs their actual damages for breach of contract and fraud;

(4) Awarding Counter-Plaintiffs their reasonable attorney's fees;

(5) Awarding such interest, before and after judgment, as may be allowed by law; and

(6) Awarding costs of court.

Plaintiffs pray for general relief.

        Respectfully submitted,

        DROUGHT, DROUGHT & BOBBITT, LLP
        2900 Weston Centre
        112 E. Pecan Street
        San Antonio, Texas 78205
        (210) 225-4031 Telephone
        (210) 222-0586 Facsimile

        By:*/s/Calhoun Bobbitt*
          Calhoun Bobbitt
          State Bar No. 02530700
          cb@ddb-law.com

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the above and foregoing document was forwarded to the following, pursuant to the Texas Rules of Civil Procedure on October 10, 2018.

    Sim Israeloff
    Charles A. Green
    Cowles & Thompson, P.C.
    901 Main Street, Suite 3900
    Dallas, Texas  75202

                /s/ Calhoun Bobbitt
                Calhoun Bobbitt